**People of the State of Illinois, Plaintiff-Appellee, v. Earl Gross, Defendant-Appellant.**

**Gen. No. 50,847.**

First District, First Division.
September 25, 1967.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Marshall J. Hartman and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James A. Stamos, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

The defendant, Earl Gross, was convicted of the charge of murder in a bench trial and was sentenced to a term of twenty to forty years in the Illinois State Penitentiary. On this appeal the defendant contends that reasonable doubt exists as to his guilt or in the alternative that the sentence was excessive.

On September 29, 1964, at about 2:30 p. m., Aloysius P. Tack, Secretary-Treasurer of Bartender's Union Local 278, was shot to death in his office at the Bartender's Union Hall on the fourth floor of 10 North Clark Street, Chicago, Illinois. The premises are described as containing a reception room and as you enter two employees sit behind a counter in the outer office. Opposite to the entrance to the reception room there is a short stairway to a four by six foot hallway which leads to a clubroom on the left and to several offices on the right including the private office of the deceased.

The evidence shows that at 2:00 p. m. on the day in question, Kathleen Harrison, the receptionist and phone operator, Marie Jadrych, the bookkeeper, and the deceased, were the only employees of the union on duty. There were union members upstairs in the clubroom. The deceased discussed office records in the outer office with Miss Jadrych for about ten or fifteen minutes and then went upstairs to his office. Miss Harrison testified that shortly afterward she heard two shots and almost immediately she saw the defendant whom she had seen on several occasions come down the stairs, run through the office and out of the premises. She said she saw nothing in his hand. Subsequently, she observed the body of the decedent, lying face down, on the landing on top of the stairs.

Miss Jadrych testified that at 2:00 p. m., while she was talking to the deceased, the defendant whom she knew came through the reception room and walked up the stairs. She said that ten or fifteen minutes later she

heard two shots and then she saw the defendant walking fast out of the office.

Francis Beller, a union member who knew the deceased, and the defendant who was also a union member, testified that at 2:30 p. m. he was in the clubroom and heard a muffled voice coming from the officers' office pleading, "Oh no, no. Please no" followed by a shot. He said he saw the defendant come from the officers' office to the doorway of the clubroom and he saw a gun in the defendant's hand. He said that when the defendant fired a shot into the clubroom ceiling he grabbed a cushion to hide his face. He then saw the deceased come out of his office mortally wounded.

John Sarnowski, the arresting and investigating officer, testified that he and another officer came to the premises about 2:45 p. m. He observed a bullet hole in the chest of the deceased and recovered a bullet from the ceiling of the clubroom. Upon receiving information, he went to the security office of the Morrison Hotel about 3:30 p. m. where he arrested the defendant who was with Mr. Rourke, the hotel's security agent. Rourke informed Sarnowski that the defendant told him there was a shooting at the Bartender's Union. He testified to four oral inculpatory statements made to him by the defendant, including a statement that he never owned a gun. He said at 9:00 p. m. he questioned a Mr. Armstrong in the presence of the defendant and that Armstrong told him he had seen the defendant with a gun.

Raymond Armstrong, a union member, testified that six weeks prior to the shooting the defendant came to his place of employment with a pistol wrapped in a handkerchief and asked him to hold it for him. He said he put it in his walk-in icebox and the next day the defendant came back and he returned the gun to him.

Cornelius Rourke, testifying for the defense, stated that he was the security officer for the Morrison Hotel

303

and that on September 29th, at 2:30 p. m., the defendant, whom he knew, came in his office in a hysterical condition and said, "Chief, I'm in trouble, I need some help." The defendant told him that he had been present at a shooting in the Bartender's Union and was afraid that if the police caught him they would beat him. The defendant denied he did the shooting or that he had a gun. Rourke said he called the police and the defendant was arrested.

The defendant took the stand and testified that he is an extra bartender and a union member. He said he went to the clubroom about 1:30 p. m. on September 29th. About 2:15 or 2:30 p. m., the deceased motioned to him to come into his office. He testified that they were alone and the deceased said, "I hate to do this but I am going to order you out of town. I said, give me a couple of weeks' work." He testified further that the deceased raised his voice very loud and said, "I said to get out of town and get out tonight." All of a sudden he said a shot was fired, he got scared and made for the door and as he started down the stairs another shot was fired and he ran out of the premises and went to the Morrison Hotel. He said he didn't know who fired the shots.

The defendant contends that reasonable doubt exists as to his guilt because Francis Beller, in his first statement to the police, said that he only saw the defendant before the shooting. He argues that two weeks later Beller changed his story and subsequently testified at the trial that he saw the defendant come out of the office after he heard a shot and fire the second bullet into the ceiling and therefore, the witness was impeached and his testimony was unbelievable.

On direct examination Beller admitted that in his first statement to the police he left out the identification of the defendant. He explained that he didn't want to get involved until he had consulted with his wife and friends. He said that two weeks after making the first statement

he contacted the police and "I told the police everything I told the court here today."

■■ Where the issue is the credibility of a witness, a reviewing court will not substitute its judgment for that of the trial court unless the evidence was unsatisfactory, improbable or insufficient to support the judgment. People v. West, 15 Ill2d 171, 154 NE2d 286. Under the circumstances of the case at bar, the determination of the credibility of Beller's testimony and the weight to be accorded to his testimony was committed to the trial judge and we see no reason to disturb that determination.

The defendant further argues that reasonable doubt exists because the defendant could not have made certain inculpatory admissions as alleged by Officer Sarnowski. He first charges that Sarnowski's testimony concerning a conversation he had with the defendant as they left the hotel is refuted and impeached by Rourke's testimony that he did not see Sarnowski talk to the defendant as they were leaving the hotel. We find this contention to be without foundation as Rourke also testified that a conversation could have taken place when he was not present and Sarnowski testified that when the conversation took place, "Mr. Rourke was not present. We were in the process of removing him [the defendant] from the Morrison Hotel enroute to the First District [Police Station]."

We also find no merit to defendant's contention that Officer Sarnowski's testimony as to another conversation with the defendant is contradicted and impeached by his own later testimony. The defendant further contends the inculpatory oral admissions were not made by him and directs our attention to three other contradictory instances of the same nature in the testimony of Officer Sarnowski. We have examined the record and considered these contentions and it suffices to say that we find them also without merit.

305

Defendant's final contention is that where the defendant denies making oral admissions which are relied on by the State it is incumbent upon the State to produce all witnesses to such admissions, citing People v. DiVito, 66 Ill App2d 282, 214 NE2d 320 and People v. Johnson, 31 Ill2d 321, 201 NE2d 367. In DiVito, the court reversed a robbery conviction by force. There, Bures, the complaining witness, testified that he and one William Orlach, were in his apartment, when two men came in after ringing the doorbell, struck Orlach in the eye, choked him and ransacked his apartment. Bures did not identify the defendant prior to or at the trial. Fingerprints taken by police officers established a fingerprint of one thumb taken from a metal box in the apartment to be identical with defendant's thumb. The defendant denied that he committed the robbery and testified that he had been in the complainant's apartment at a time prior to the robbery and at the invitation of Bures. In addition to not being satisfied with other circumstances either brought out or not brought out by the evidence, the Appellate Court noted that although Orlach was in the apartment during the entire one hour while the robbery was committed yet he was not called as a witness. The court commented that although Orlach gave the police officers his address he was not called as a witness and did not testify at the trial and went on to say "[t]he inference might well be that Orlach had seen the robbers and would have testified that the defendant was not one of them." In Johnson witnesses were not brought forward to establish an essential element of the charge. These cases are distinguishable on the facts from the instant case. Officer Sarnowski testified to oral admissions and the testimony of the other officers would have merely been cumulative and furthermore they were listed as witnesses and easily available to the defendant.

It is uncontradicted that the defendant was alone in the presence of the deceased before the first

shot was fired. Defendant denies killing the deceased, making any statement to Sarnowski and having a gun at the time, but did not dispute Armstrong's testimony that he had possessed a gun. Miss Harrison and Miss Jadrych testified they heard shots and saw the defendant run out of the office area. Mr. Beller testified, at the trial, that after he heard a shot coming from the office he then saw the defendant walk out of the office area and fire a shot into the clubroom ceiling before fleeing.

> Where a cause is tried without a jury the law commits to the trial judge the determination of the credibility of the witnesses and the weight to be given their testimony. Where the evidence is merely conflicting, this court will not substitute its judgment for that of the trier of fact who heard the witnesses. People v. Thornton, 26 Ill2d 218, 222, 186 NE2d 239.

We are of the opinion that the evidence in the instant case was sufficient to justify the trial judge's determination that the defendant's guilt was established beyond a reasonable doubt.

██ The defendant, in the alternative, prays for reduction of sentence under the power given to us by Ill Rev Stats 1963, c 38, § 121–9. In our opinion, no lawful justification, circumstances or excuse, appear in the record to justify the exercise of that authority. The sentence imposed by the trial judge was within the limits imposed by statute and we are reluctant, under the circumstances, to interfere with the discretion vested in the trial judge where the sentence is within the statutory range. People v. Calhoun, 22 Ill2d 31, 174 NE2d 166.

For the reasons given the judgment and sentence of the Criminal Division of the Circuit Court is affirmed.

Judgment affirmed.

MURPHY, P. J. and ADESKO, J., concur.