THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
LEE T. WILLIAMS, Defendant-Appellant.

First District (5th Division)    No. 76-16

Opinion filed November 24, 1976.

James J. Doherty, Public Defender, of Chicago (Suzanne M. Xinos, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Michael E. Shabat, and Jeffrey C. Pattee, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE LORENZ delivered the opinion of the court:

Following a bench trial, defendant was found guilty of unlawful possession of an automobile in violation of section 4—103(a) of the Illinois Vehicle Code (Ill. Rev. Stat. 1973, ch. 95½, par. 4—103(a)) and sentenced to a term of one to three years. On appeal, he contends he was not proven guilty beyond a reasonable doubt.

McGruder Johnson was tried and convicted along with defendant; however, he did not appeal.

At trial the following pertinent facts were adduced.

*For the State:*
  *Fred Sherman*

On the evening of February 20, 1974, he discovered his 1970 Buick Riviera missing from the company parking lot, where he had parked it that morning. The next time he saw the car was in March 1974 in the police pound. It was "almost completely stripped." The fenders, doors, trunk, and hood had been removed.

  *Rudy Rodriquez*

He is a Chicago police officer. On February 22, 1974, while on patrol he came across a 1970 Chevelle, missing its engine and transmission. Noticing skid marks, he followed them down a dirt alley to a single-car garage behind a dwelling at 7419 South Parnell.

Pursuant to this observation, he and his partner, Officer Michael Cummings, drove past the garage at about 2 p.m. on March 9, 1974. The garage door was open. Standing just inside the garage, on either side of a 1970 Buick Riviera, were defendant and McGruder Johnson. They were removing the "front clip" from the car. The hood, trunk lid, and doors had been removed and were off to the side. The officers, who were in uniform, got out of their marked squad car and approached the men who dropped the "front clip" and ran toward the side door of the garage. They apprehended the suspects before they reached the door.

After a radio check revealed that the vehicle had been reported missing, he arrested both suspects and advised them of their rights. Thereafter, defendant stated, "We can't take a bust; is there something we can do?" He threatened to charge him with bribery and defendant said nothing further. Later, he ascertained the garage was owned by Johnson's parents.

On cross-examination he acknowledged that although he drove by the garage once a day between February 22 and March 9 he never looked into the garage windows nor checked the ownership of the garage nor attempted to obtain a search warrant. On the date in question, the garage

doors were "open" but not "wide open." He denied kicking down the doors. He also stated that when the suspects ran, he drew his weapon and told them to stop.

When he first saw the two suspects, defendant's hands were on the right side of the front fender and Johnson's hands on the left side of the front fender. They were removing the "front clip" which consists of the fender, bumper, and grill.

He denied saying during a preliminary hearing on May 14, 1974, that he saw defendant removing the front hood. He suggested that this was a typographical error in the transcripts, insisting that the hood had been removed before he arrived.

He stated that the reason Officer Cummings did not testify was because Cummings was in narcotics court on the day of the trial.

*For defendant:*

*McGruder Johnson*

On March 9, 1974, he lived with his father at 7419 South Parnell. He bought the car in question, which was "supposed to be stolen," from someone he knew by "being in the street." This person was to deliver the car, and remove the parts Johnson needed for $150. He did not tell defendant anything about the car until they were arrested.

The police gained entry to the garage by kicking open the side door of the garage. The larger doors were "closed tight." He was not by the front of the car when the officers entered, but rather he was by the side door of the garage. Neither he nor defendant ran. He did not hear defendant tell police, "I can't stand another bust; can I make it good to you," or any words to that effect.

On cross-examination he testified he got the car from "Bump" on about March 6, 1974. He denied knowing the car was stolen. Before the police arrived, he was in the garage for 15 to 30 minutes. He did "nothing" during this time. He denied taking parts off the car.

At the preliminary hearing he heard defendant say he arrived at the garage about one half hour before police. He remembers, however, that he had been cleaning his yard and was putting his rake and tools away in the garage when defendant knocked on the door and walked in. When he went to close the door, the police kicked it open. No one dismantled any of the car that day, although the doors and trunk lid were off the car. He "guesses Bump" removed these parts. He does not remember if the bumper and grill were off the car.

At the conclusion of the closing arguments, Johnson was convicted of theft (Ill. Rev. Stat. 1973, ch. 38, par. 16—1) while defendant was acquitted of this charge. Both defendants were found guilty of unlawful

possession of an automobile. (Ill. Rev. Stat. 1973, ch. 95½, par. 4—103(a).)[1] Only defendant Williams appeals here.

OPINION

Defendant first contends he was not proven guilty of unlawful possession. He argues that the uncorroborated testimony of Officer Rodriquez that he was apprehended dismantling a 1970 Buick at midday in an open garage is inherently improbable. Moreover, he argues that this testimony was directly contradicted by Johnson. Defendant also claims this testimony is biased because Rodriquez is a tactical officer. He asserts that tactical officers are policemen "with a proclivity for aggressive arrests and investigations." He concludes, therefore, that Rodriquez' testimony, including his assertion that he was caught "stripping" the car is suspect, raising a reasonable doubt as to his guilt.

■■ In a bench trial, the credibility of witnesses is for the trial judge to determine, and his determination will not be disturbed on review unless the evidence is so unsatisfactory as to raise a reasonable doubt as to defendant's guilt. (*People v. Better* (1975), 33 Ill. App. 3d 58, 337 N.E.2d 272.) Here, the points argued by defendant do not raise such a doubt.

Although Johnson testified that the garage doors were closed and that neither he nor defendant removed parts from the car, his bias is obvious. Defendant asserts that Johnson pleaded guilty and thus had nothing to gain by his testimony. However, we find no record of a guilty plea by Johnson although there was discussion of this before trial. Johnson, through his attorney, cross-examined witnesses and made a closing argument to the court. Despite defendant's assertion to the contrary, Johnson's testimony must be considered in light of his claim of innocence at trial.

Nor do we agree with defendant that the failure of Officer Cummings to testify raises an inference against the State. *People v. Divito* (1966), 66 Ill. App. 2d 282, 214 N.E.2d 320, upon which defendant relies, held that the *unexplained* absence of a witness may give rise to a negative inference. In the instant case, Officer Cummings' absence was explained—he was testifying in another matter. Moreover, his testimony would have been cumulative. Certainly, if defendant wished to call him as a witness, he was free to do so. *People v. Gross* (1967), 87 Ill. App. 2d 300, 232 N.E.2d 54.

Finally, we find no basis, other than the conclusory remarks of defense

[1] Section 4—103 of the Illinois Vehicle Code provides in part:
"Offenses relating to motor vehicles and other vehicles—Felonies.
It is a violation of this Chapter for:
(a) A person not entitled to the possession of a vehicle to receive, possess, conceal, sell or dispose of it, knowing it to have been stolen or converted; ° ° °." (Ill. Rev. Stat. 1973, ch. 95½, par. 4—103(a).)

counsel at trial, for defendant's assertion that tactical unit officers are biased.

■■ Defendant also contends that the State failed to prove that he knew the car had been stolen—an essential element of this offense. He argues that there was nothing in the garage to indicate the automobile had been stolen, thus negating any inference of constructive knowledge. Similarly, he insists there was no evidence to refute Johnson's testimony exonerating him.

Defendant's knowledge may be established by proof of circumstances that would cause a reasonable person to believe property had been stolen. (*People v. Stewart* (1960), 20 Ill. 2d 387, 169 N.E.2d 796.) Here, defendant was found removing the front clip from a 1970 Buick Riviera which Johnson had recently acquired. Defendants had already removed the hood, trunk lid, and doors, although there was no evidence that these parts were damaged or required replacement. Even if defendant was not specifically informed that he was "stripping" a stolen car, this fact should have been apparent to him. He cannot ignore the obvious and then assert his ignorance as a defense.

■■ Moreover, defendant's actions and statement at the time of his arrest indicate he actually knew that the car had been stolen. Defendant's knowledge may be inferred from "the surrounding facts and circumstances * * * including the acts and declarations of the accused." (*People v. Mulford* (1944), 385 Ill. 48, 56, 52 N.E.2d 149, 153.) In the instant case, defendant's flight when approached by police and his subsequent attempt to bribe the officers following his apprehension are inconsistent with his claim of innocence. *People v. Nunn* (1965), 63 Ill. App. 2d 465, 212 N.E.2d 342 (flight); *People v. Mulford* (1944), 385 Ill. 48, 52 N.E.2d 149 (bribery).

■■ In support of this contention, defendant has cited Johnson's testimony exonerating him, arguing that Johnson had no reason to lie about defendant's participation. We think defendant's reliance upon the testimony of Johnson is misplaced. First, as we noted earlier, Johnson was on trial along with defendant. Therefore, to the extent his testimony exonerates himself as well as defendant, it is suspect. Second, as we also noted earlier, the weight to be accorded a witness' testimony is discretionary with the trial court. We find Johnson's testimony to be replete with inconsistent and vague statements. He both admitted and denied knowing the car had been stolen. He then went on to relate how he obtained the car from someone named "Bump" who put it in his garage and whom he "guesses" removed the parts. In light of the ambiguous nature of his testimony we are not surprised that the trial court chose to discount it.

■■ After reviewing the testimony we believe there was adequate evidence to support the trial court's finding that defendant knew or should have known that the car had been stolen.

For the foregoing reasons the judgment of the trial court is affirmed.

Affirmed.

SULLIVAN and BARRETT, JJ., concur.