THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
BETTY M. SMITH, Defendant-Appellant.

First District (5th Division)   No. 83—500

Opinion filed May 11, 1984.

James J. Doherty, Public Defender, of Chicago (Judith A. Stewart, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat and Sara Dillery Hynes, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LORENZ delivered the opinion of the court:

Defendant appeals following a bench trial in which she was convicted on January 18, 1983, of aggravated battery in the stabbing of an individual she knew to be an employee of the State of Illinois, Department of Public Aid (Ill. Rev. Stat. 1981, ch. 38, par. 12—4(b)(5)). She was subsequently sentenced to 30 months' probation conditional upon her continued treatment as an outpatient at a men-

tal health facility.

Defendant contends that her conviction should be reversed because (1) the stabbing was not intentionally or knowingly committed, as it was accidental; and (2) the State failed to rebut expert testimony which showed the defendant to be insane at the time of the offense.

The State's evidence established that defendant was present at the office of the State of Illinois Department of Public Aid located at 3910 West Ogden Avenue, Chicago, Illinois, on February 3, 1982, in an attempt to receive public assistance.

Marcella Keller, supervising caseworker for the Department of Public Aid (Department) testified that the defendant was brought into her office shortly before 10 a.m. on February 3, 1982, by one of Keller's employees who had had a problem dealing with defendant in her request for public assistance and food stamps.

When Keller discovered that defendant already had an active public assistance file under another name at the Department's Michigan Avenue office, she informed her that she would have to go to the Michigan Avenue office for any further assistance. After defendant protested that she did not wish to go, Keller proceeded to complete an interoffice referral along with a carfare slip to transfer defendant to the other office. While she was writing out these forms, with her head down towards the desk, she heard another caseworker shout, "Miss Keller, she has a knife," in reference to defendant.

Keller looked up from her desk and saw defendant coming "across" the desk with a knife in hand. She got out of her seat and backed up against the wall. At this point, two other Department employees hustled defendant out of Keller's office and into the hallway.

Keller, who followed them out of her office, further testified that defendant refused to surrender the knife to Naomi Pryor, a uniformed security guard, who then tried to disarm the defendant; that thereafter, Pryor shouted that she was cut; that Keller observed Pryor bleeding from the hand; but that she could not determine from her perspective whether the defendant released the knife once Pryor started to bleed.

The victim, Naomi Pryor, testified on behalf of the State that on February 3, 1982, she was employed by Great Lakes Security and assigned to the Department's office on Ogden Avenue; and that at approximately 10 a.m. on February 3, 1982, she was seated at her desk, approximately 50 feet from Keller's office, where she observed the defendant being led out of the office by the Department employ-

ees. As Pryor started down the hallway toward the office, the defendant came within arms length of her and she noticed a knife in defendant's right hand which was held down beside her coat.

After defendant refused to surrender the knife as requested, Pryor grabbed defendant's right wrist and a tussle ensued. She was shoved against a cubical as she held defendant's arm. Defendant then started "coming over" her back. Pryor took one of her hands off defendant's hand that was holding the knife, and held her elbow up against defendant's chin to prevent her from "coming over" her. As she did this, she continued to hold defendant's right hand which contained the knife.

When defendant started falling back, Pryor stretched her hand out to try to hold defendant, who was still holding the knife in her hand. Although she did not feel the five-inch blade cut through her fingers she soon realized that she had been cut. The defendant had twisted the knife while it was lodged in her hand, causing further damage. Her injury required two surgeries and a hospital stay of six days.

On cross-examination, Pryor testified that defendant had never threatened her with her knife; that defendant never raised the knife at her, but that defendant's knife had cut her as defendant jerked away from her; and that she was unable to release the knife during her struggle with the defendant.

Defendant's motion for directed finding based on the accidental nature of the injury was denied.

Doctor Henry Stipes, a psychiatrist employed by the Psychiatric Institute of the circuit court of Cook County, testified on behalf of the defendant. He examined defendant on March 31, 1982, and July 28, 1982. Pursuant to his examination of July 28, 1982, he formulated the opinion that defendant was suffering from schizophrenia, paranoid type. It was his opinion, based upon his (1) personal examination of defendant, (2) review of defendant's previous psychological records, and (3) the police record in this case, that defendant was not able to appreciate the criminality of her conduct on February 3, 1982, the date of the stabbing. Further, it was his opinion that defendant was not subject to involuntary admission on the hearing date. Stipes further testified that defendant was currently an out-patient in a mental center and was receiving 100 milligrams of Mellaril daily.

On cross-examination, Stipes acknowledged that he was the first psychiatrist to diagnose her as paranoid schizophrenic; and that defendant had previously been treated by psychologists at the Elgin

Mental Health Center where she was diagnosed as having a paranoid disorder, mental retardation and paranoid personality disorder.

Stipes spent a total of approximately two hours interviewing defendant, and concluded that her inappropriate behavior on February 3, 1982, led him to believe she suffered from psychosis on that date, although he admitted that not all inappropriate conduct under the instant circumstances would equate to psychotic behavior. He further stated that her conduct, in and of itself, did not lead him to believe she was psychotic on February 3, 1982, but that it was her delusional thinking (related to him later by defendant), concerning people trying to harm her which illustrated a psychosis.

Finally, Stipes testified that he was not aware of the length of time defendant's psychotic state existed prior to his examination of her; that it could have arisen subsequent to defendant's incarceration; and that he did not know for a fact whether she was psychotic on February 3, 1982.

The trial court found defendant guilty of aggravated battery and sentenced her to 30 months' probation with the condition she continue to receive outpatient treatment at the Bobby E. Wright Community Health Center, as well as continue her prescribed medication.

OPINION

■■ Defendant initially contends the stabbing was accidental and therefore not the intentional or knowing act required for a conviction based on aggravated battery.

The State conversely maintains that while defendant may not have intentionally stabbed the victim, she nonetheless acted knowingly, under Illinois law, where the conduct she consciously engaged in—pulling out a knife, refusing to give it to a uniformed security guard, and struggling with the security guard for possession of the knife—was practically certain to cause the result—cutting the security guard's hand.

Section 12—4 of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 12—4) provides in pertinent part that the offense of aggravated battery is committed when:

"(b) A person who, in committing a battery *** either:

(1) Uses a deadly weapon;

* * *

(5) Knows the individual harmed to be a caseworker, investigator, or other person employed by the State Department of Public Aid *** and such *** person is upon the grounds

of Public Aid office ***." Ill. Rev. Stat. 1981, ch. 38, pars. 12—4(b)(1), (5).

It is the State's position that the requirements of section 12—4(b)(1) or (5) are satisfied by virtue of the fact that the victim was employed as a security guard at a public aid office and for the further reason that the injury was inflicted by defendant using a knife, which has been held to be a deadly weapon. *People v. Mastin* (1969), 110 Ill. App. 2d 400, 402-03, 249 N.E.2d 658.

Defendant contends that Pryor's own testimony recounts only an accidental injury; that defendant was not using the knife in a threatening manner before or during the encounter with Pryor; that when defendant refused to hand the knife over to Pryor, it was Pryor's jamming of her elbow into defendant's chin which led to defendant's fall; and that it was the fall that precipitated the cut of Pryor's hand and not defendant's voluntary act.

Defendant cites section 4—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 4—1) for the proposition that "A material element of every offense is a voluntary act ***," and because defendant states as her position that she accidentally fell upon Pryor, she cannot and should not be guilty of aggravated battery due to her lack of the requisite mental state needed for this act.

We agree with the State's position that the issue raised by the defendant is whether the State proved the battery was committed intentionally or knowingly.

Section 12—3 of the Criminal Code of 1961 provides:

"(a) A person commits battery if he intentionally or *knowingly* without legal justification and by any means, (1) *causes bodily harm* to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." (Emphasis added.) Ill. Rev. Stat. 1981, ch. 38, par. 12—3(a).

Defendant takes no issue with the fact that bodily harm was caused to Pryor as a result of this scuffle. Thus, the issue revolves around whether defendant acted knowingly.

Section 4—5 of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 4—5) provides in pertinent part:

"A person knows, or acts knowingly or with knowledge of:

\* \* \*

(b) The result of his conduct, described by the statute defining the offense, when he is consciously aware that such result is practically certain to be caused by his conduct." Ill. Rev. Stat. 1981, ch. 38, par. 4—5.

In the instant case, defendant should have realized or been "con-

sciously aware" that injury to the victim was the natural and probable consequence of her taking the knife in her hand, and her refusal to relinquish such to the victim. Awareness is the primary distinction between the mental states of knowledge and negligence. (Ill. Ann. Stat., ch. 38, par. 4—3, Committee Comments, at 256-57, 260 (Smith-Hurd 1972).) Knowledge and intent involve an awareness of the harm resulting from one's act. (*People v. Herr* (1980), 87 Ill. App. 3d 819, 822, 409 N.E.2d 442.) Knowledge, due to its very nature, is ordinarily proven by circumstantial evidence, rather than by direct proof. *People v. Sedlacko* (1978), 65 Ill. App. 3d 659, 663, 382 N.E.2d 363.

In a case similar to the case at bar, *People v. Rickman* (1979), 73 Ill. App. 3d 755, 391 N.E.2d 1114, the court held that in order for the defendant to be proved guilty of aggravated battery, the State need only show that defendant knowingly scuffled with victim and that the victim received great bodily harm (here it was a broken ankle) as a result of the scuffle; the fact that defendant didn't intend to break the victim's ankle was immaterial where it was shown that defendant did intend to scuffle with the victim. "Anyone who engages in a scuffle must be deemed to be aware that someone may be injured as a result." 73 Ill. App. 3d 755, 760.

Defendant, by refusing to surrender her knife to the victim, should have known that a scuffle would naturally ensue. "One who does an unlawful act is liable for the consequences even though they may not have been intended." *People v. Hickman* (1973), 9 Ill. App. 3d 39, 44, 291 N.E.2d 523.

Although we quarrel not with defendant's claim that she did not intend to harm the victim, we do not, however, see this as an accidental act on the part of defendant.

We therefore find that it was not unreasonable for the trial court to have inferred from these facts that defendant was consciously aware (knew) that serious injury was practically certain to be caused by her conduct.

■ Defendant next contends that the State failed to meet its burden of proving her sanity beyond a reasonable doubt because the testimony of the defense psychiatrist was not contradicted by other expert evidence and lay witness testimony cannot support a finding of sanity.

It is defendant's position that Dr. Henry Stipes, the only expert witness to testify in the instant case, stated that defendant suffered from a mental illness-schizophrenia, paranoid type—and that as a result of this illness, she would have been unable to appreciate the

criminality of her actions or to conform her actions to the requirements of the law on February 3, 1982, the day of the alleged stabbing.

Thus, defendant contends that she met the statutory definition of insanity contained within section 6—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 6—2), which provides in pertinent part:

> "(a) A person is not criminally responsible for conduct if at the time of such conduct, as a result of mental disease or mental defect, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law." Ill. Rev. Stat. 1981, ch. 38, par. 6—2(a).

Defendant posits that Stipes elicited delusional beliefs from her during his March 1982 interview with her regarding Chinese, Japanese, street gangs and her family being out to harm her; that as a result of these delusions defendant carried the knife for protection; and any overt action on the part of the security guard would make her act aggressively.

The State conversely contends that it did not have the burden of proving defendant sane, and cites *People v. Martin* (1980), 87 Ill. App. 3d 77, 409 N.E.2d 114, where the court stated, "While all men are presumed sane, if the defendant raises the affirmative defense of insanity by presenting sufficient evidence of insanity as to create a reasonable doubt of sanity, the burden shifts to the State to prove beyond a reasonable doubt that the accused was legally sane at the time the offense was committed." 87 Ill. App. 3d 77, 81.

It is our belief that the testimony of Dr. Stipes in the instant case did not raise a reasonable doubt as to defendant's sanity. Dr. Stipes had testified that defendant was treated at the Elgin Mental Health Center by psychologists where she was diagnosed as having a paranoid disorder, paranoid personality disorder, and mental retardation with an I.Q. of 64, but was not diagnosed as being psychotic. Stipes admitted that disorders of this nature can exist without psychoses.

Additionally, Stipes admitted, at the close of defendant's case that he was not aware of the length of time defendant's present psychotic state existed prior to his initial examination of defendant in March 1982; that it could have arisen subsequent to defendant's incarceration; and that he did not know for a fact whether defendant was psychotic on February 3, 1982.

Although an abnormality diagnosed as psychosis qualifies as a

mental disease sufficient to relieve one of criminal responsibility (see *People v. Kuhn* (1979), 68 Ill. App. 3d 59, 64, 385 N.E.2d 388), we believe defendant's sanity at the time of the crime was a question of fact to be determined by the trier of fact. *People v. Ford* (1968), 39 Ill. 2d 318, 320, 235 N.E.2d 576.

The trial court heard Dr. Stipes' testimony that he was unable to determine that defendant was, for a fact, psychotic on the date of the offense and as trier of fact, weighed the testimony and determined the credibility of the witnesses, both lay and expert, without being required by law to accept the opinions of psychiatrists concerning defendant's sanity. (*People v. Goodwin* (1980), 83 Ill. App. 3d 203, 403 N.E.2d 1051.) We will not disturb this determination of the trier of fact unless it is palpably erroneous. *People v. Arndt* (1972), 50 Ill. 2d 390, 396, 280 N.E.2d 230.

We therefore find the trial court correct in its determination that Stipes' testimony failed to raise a reasonable doubt as to defendant's sanity on the date of the offense, as only insanity shown to exist at the very time of the crime can excuse it. *People v. Dunigan.*(1981), 96 Ill. App. 3d 799, 820, 421 N.E.2d 1319.

Further, it is therefore irrelevant that Dr. Stipes' testimony was not contradicted by the State via other expert evidence, because it is well established that the State need not call an expert to rebut testimony by an expert called by the defense. *People v. Young* (1978), 60 Ill. App. 3d 351, 353, 376 N.E.2d 739.

Pursuant to *People v. Nicholls* (1978), 71 Ill. 2d 166, 374 N.E.2d 194, this court awards the State costs in the amount of $50.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

MEJDA, P.J., and WILSON, J.,* concur.

---

*This opinion was adopted as the opinion of the court prior to the death of Mr. Justice Wilson.