THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSEPH D. WEHRWEIN, Defendant-Appellant.

First District (1st Division)   No. 1—87—2602

Opinion filed November 5, 1990.—Rehearing denied March 21, 1991.

MANNING, J., dissenting.

Genson, Steinback & Gillespie, of Chicago (Edward M. Genson and Terence P. Gillespie, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund, James E. Fitzgerald, and Sharon L. Heath, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAMPBELL delivered the opinion of the court:

The defendant, Joseph Wehrwein, was arrested and charged with possessing a certificate of title without complete assignment, in violation of section 4—104(a)(2) of the Illinois Vehicle Code (Ill. Rev. Stat. 1987, ch. 95½, par. 4—104(a)(2)). Following a bench trial in the circuit court of Cook County, the defendant was convicted of that offense, a Class 4 felony. Because the defendant had two prior felony convictions, for possession of a stolen motor vehicle and for unlawful use of a weapon, he was sentenced to an extended term of 3½ years' imprisonment, to run concurrently with his sentence for the possession of a stolen motor vehicle conviction.[1] The defendant now appeals his conviction to this court. We affirm.

The defendant's trial took place on July 21, 1987, and August 10, 1987. At trial, the State presented Timothy Yearwood as its first witness. Yearwood testified that on September 10, 1986, he met the defendant at the Photon Truck Driving School, where the defendant was employed, in order to purchase a truck from the defendant. Yearwood and the defendant then drove from the Photon School to a nearby truck yard, which also belonged to the Photon School. Yearwood explained that the defendant kept his truck at the Photon truck yard. While they were in the yard, Yearwood said, he and the defendant read over a contract for the sale of the truck. The contract specified that Yearwood was to pay $7,000 for the truck, in monthly installments of $1,000. Yearwood gave the defendant the first $1,000 payment, in exchange for the truck, title to the truck, and a copy of the sale contract.

Yearwood then testified that when he received title to the truck, the only name that appeared on the title was that of Kulas Czeslaw.[2] The sale contract between Yearwood and the defendant, however, stipulated that Yearwood was to list the defendant as a lien holder on

---

[1] The defendant's conviction for possession of a stolen motor vehicle was affirmed by this court in an earlier appeal. See *People v. Wehrwein* (1989), 190 Ill. App. 3d 35, 545 N.E.2d 1005.

[2] The record is unclear as to whether the original owner's name was Kulas Czeslaw or Czeslaw Kulas. For purposes of this opinion, however, he will be referred to as Kulas Czeslaw.

the certificate of title. Yearwood admitted that he never wrote the defendant's name on the certificate. Yearwood also testified that in early October 1986 he took the truck to the Chicago police department, so that they could inspect it, and informed the officers that he had purchased the truck from the defendant. Yearwood never explained to the court why he took the truck to the police department. Apparently, although it is not clear from the record, the officers allowed Yearwood to take the truck home, but kept the title to the truck. Yearwood said he kept the truck for approximately one month and a half, and then asked the defendant to retake possession of the truck because he could not afford the monthly payments. The defendant took possession of the truck on October 15, 1986. Yearwood later signed a release of the previous agreement that he had with the defendant. On cross-examination, Yearwood said that he never asked the defendant why Kulas Czeslaw's name was on the title.

Detective John Miller was the State's next witness. Miller testified that he was employed as a detective by the City of Chicago in the auto theft division of the police department. Miller said that on or around October 1, 1986, he had a telephone conversation with Yearwood concerning an engine that Yearwood had reported stolen. Miller had telephoned Yearwood to tell him that the police department had recovered the engine, and Yearwood mentioned to Miller that he had purchased a truck from the defendant. Miller then asked Yearwood to bring the truck to the police station so that he could inspect it. Miller said that Yearwood brought the truck, the certificate of title, and the sale contract to the police station. Miller noticed that the front of the certificate of title showed that Kulas Czeslaw was the title holder and had purchased the vehicle on October 20, 1983. The back of the certificate of title contained Czeslaw's signature and showed that Czeslaw had sold the vehicle on November 3, 1984, but did not indicate to whom he had sold it.

Miller and a partner then proceeded to the Photon Driving School on October 23, 1986, in order to talk with the defendant. Miller said that when he and his partner walked in the front door of the school, they saw the defendant behind a counter. The officers identified themselves to the defendant and asked him if he wanted to step outside, since there were students in and around the immediate vicinity. The defendant accompanied the officers outside, and Miller showed the truck title to the defendant. The defendant admitted that he had sold Yearwood the truck and said that he had asked Yearwood to insert his name on the title as lien holder. The officers then arrested the defendant and gave him his *Miranda* warnings.

Following Miller's testimony, the State rested. The defendant moved for a directed finding of acquittal, which the trial court denied. The defendant then took the stand in his own behalf.

The defendant testified that he had purchased the truck at issue in December 1984 from Len Adams. The defendant said that he did not know Kulas Czeslaw. The defendant also said that he did not know that the back of the certificate of title had to be completed and did not know how to complete a title. Nonetheless, before the defendant sold the truck to Yearwood, he asked his attorney to draw up a sales contract. The defendant testified that when he sold the truck to Yearwood, he gave Yearwood the certificate of title, but did not fill out the title because he was unaware that he was required to do so. The defendant also testified that Yearwood was supposed to put his name on the title as lien holder. Finally, the defendant testified that he did not know it was against the law to have an incomplete title.

On cross-examination, the defendant said that the truck involved in this case was not the first truck that he had purchased. The defendant testified that he never notified the Secretary of State or the Department of Revenue when he bought the truck and was not aware that there was a State sales tax on vehicle purchases. Defendant admitted that he knew he was buying a truck from someone not listed on the certificate of title, and also admitted that he did not write the odometer reading on the title or put his name on the title as lien holder. On redirect examination, the defendant stated that he had never notified the Secretary of State or the Department of Revenue when he bought or sold a vehicle.

The defense rested following the defendant's testimony. As noted, the court found the defendant guilty of possession of a certificate of title without complete assignment and sentenced him to an extended term of 3½ years' imprisonment.

On appeal, the defendant first contends that the statute at issue in this case is unconstitutionally vague both on its face and as applied. The defendant claims that the statute is vague on its face because it fails to provide a person with notice of what conduct it proscribes. The defendant argues that the elements of the offense were unclear because the statute failed to define the terms "possess," "complete," or "assignment," and also because it failed to specify a *mens rea* requirement. The defendant also contends that the statute failed to delineate a person's duties or obligations under the statute. Because the statute is vague, the defendant argues, it encourages arbitrary enforcement and abuse of discretion in determining whether a person has violated the statute.

In response, the State maintains that the statute here is clear and precise and comports with due process requirements. The State contends that an examination of the statute as a whole reveals a precise scheme for controlling and regulating the acquisition and disposition of motor vehicles. The State alleges that this statutory scheme clearly delineates what an individual must do with a certificate of title when he purchases or sells a motor vehicle. Further, the State argues that the words "possess," "complete," and "assignment" must be given their ordinary and popular meanings; thus, the statute is not vague merely because it fails to define those terms. Finally, the State contends that a mental state is implicit in the statute because the statute must be construed with reference to the Illinois Criminal Code of 1961, which sets forth intent, knowledge or recklessness as the applicable mental states.

██ █ It is well settled that when addressing challenges to the constitutionality of a statute, the statute is presumed constitutional and all reasonable doubts must be resolved in favor of upholding the statute's validity. (*People v. McPherson* (1978), 65 Ill. App. 3d 772, 774, 382 N.E.2d 858, 860; see also *People v. La Pointe* (1981), 88 Ill. 2d 482, 499, 431 N.E.2d 344, 352; *People v. Ortega* (1982), 106 Ill. App. 3d 1018, 1023, 436 N.E.2d 606, 610.) A court's primary consideration in construing a statute is to give effect to the legislature's intent by examining not only the language used in the statute, but also the reason for the law and the evil intended to be remedied. (*La Pointe*, 88 Ill. 2d at 499, 431 N.E.2d at 352; *McPherson*, 65 Ill. App. 3d at 774, 382 N.E.2d at 860.) When a statute is challenged as vague, a court will assume that the words used in the statute have their ordinary and popularly understood meanings, absent a contrary legislative intent. *La Pointe*, 88 Ill. 2d at 499, 431 N.E.2d at 352; *McPherson*, 65 Ill. App. 3d at 775, 382 N.E.2d at 860.

██ A statute is void for vagueness if its prohibitions are not clearly defined. (*Grayned v. City of Rockford* (1972), 408 U.S. 104, 108, 33 L. Ed. 2d 222, 227, 92 S. Ct. 2294, 2298.) A vague statute fails to provide a person of ordinary intelligence with notice that his conduct is prohibited and also encourages arbitrary and discriminatory enforcement. (*Grayned*, 408 U.S. at 108-09, 33 L. Ed. 2d at 227-28, 92 S. Ct. at 2298-99; *Papachristou v. City of Jacksonville* (1972), 405 U.S. 156, 162, 31 L. Ed. 2d 110, 115, 92 S. Ct. 839, 843.) To succeed in a vagueness challenge, one must show that a law is impermissibly vague in all of its applications. (*Village of Hoffman Estates v. Flipside* (1982), 455 U.S. 489, 497, 71 L. Ed. 2d 362, 371, 102 S. Ct. 1186, 1193.) Criminal statutes are held to a higher standard and must

define the crime with "appropriate definiteness." (*Winters v. New York* (1948), 333 U.S. 507, 515, 92 L. Ed. 840, 849, 68 S. Ct. 665, 670.) A criminal statute is vague if it fails to provide sufficient notice of what conduct is forbidden (*People v. Gurell* (1983), 98 Ill. 2d 194, 207, 456 N.E.2d 18, 23), and fails to provide ascertainable standards of guilt (*Winters*, 333 U.S. at 515, 92 L. Ed. at 849, 68 S. Ct. at 670). Nonetheless, impossible standards of specificity are not required. *Grayned*, 408 U.S. at 110, 33 L. Ed. 2d at 228-29, 92 S. Ct. at 2300; *Gurell*, 98 Ill. 2d at 207, 456 N.E.2d at 23.

■ The statute at issue in this case provides: "It is a violation of this Chapter for: *** [a] person to possess any manufacturers certificate of origin, salvage certificate, junking certificate, certificate of title, [or] display certificate without complete assignment." (Ill. Rev. Stat. 1987, ch. 95½, par. 4—104(a)(2).) The defendant contends that the statute is vague because it does not define "possess," "complete," or "assignment." Because these words are not defined, however, they must be given their ordinary and popularly understood meaning. (*La Pointe*, 88 Ill. 2d at 499, 431 N.E.2d at 352; *McPherson*, 65 Ill. App. 3d at 775, 382 N.E.2d at 860.) "Possess" is defined as "[t]o cause to own [or] hold *** such as property." (American Heritage Dictionary 967 (2d ed. 1982).) "Complete" is defined as "[h]aving all necessary or normal parts, components or steps; entire." (American Heritage Dictionary 301 (2d ed. 1982).) "Assignment" is defined as "[t]he transfer of a claim, right, interest, or property." (American Heritage Dictionary 135 (2d ed. 1982).) According to the ordinary and popularly understood meanings of the words of the statute, the statute prohibits a person from owning or holding a certificate of title without taking all the necessary steps for transfer of the certificate. This statute is sufficiently definite to survive a vagueness challenge. Considering the words of the statute along with the reason for the law and the evil intended to be remedied, namely, motor vehicle theft, this court concludes that the statute provides a person of ordinary intelligence with notice that his conduct is prohibited.

■ In addition, the statute does not encourage arbitrary enforcement and an abuse of discretion. Police officers can arrest, and prosecutors can prosecute, only those who possess a certificate of title without complete assignment. There is no leeway for an officer to determine whether a person does or does not possess an incomplete certificate. This case is distinguishable from those cited by the defendant where courts found statutes did encourage arbitrary enforcement and abuse of discretion. *Cf. Smith v. Goguen* (1974), 415 U.S. 566, 39 L. Ed. 2d 605, 94 S. Ct. 1242 (statute subjecting one to criminal liability

for treating flag of the United States contemptuously was unconstitutionally vague because it did not provide notice to defendant that having a small United States flag sewn on his trousers was prohibited); *Papachristou*, 405 U.S. 156, 31 L. Ed. 2d 110, 92 S. Ct. 839 (vagrancy ordinance was unconstitutionally vague because list of crimes was all inclusive and generalized, placing unfettered discretion to arrest in the hands of the police officers); *Winters*, 333 U.S. 507, 92 L. Ed. 840, 68 S. Ct. 665 (statute prohibiting distribution of magazine principally "made up of criminal news, police reports, or accounts of criminal deeds, or pictures, or stories of deeds of bloodshed, lust or crime" was unconstitutionally vague because the standard of guilt was impossible to define); *McPherson*, 65 Ill. App. 3d 772, 382 N.E.2d 858 (phrase "small quantities" in statute was unconstitutionally vague because interpretation of phrase was wholly subjective).

■ The defendant's claim that the statute is vague because it lacks a *mens rea* requirement is also without merit. As noted by the State, when a statute does not prescribe the mental state applicable to an offense other than an absolute liability offense, the mental states of intent, knowledge or recklessness are applicable. (See Ill. Rev. Stat. 1987, ch. 38, pars. 4—3, 4—4, 4—5, 4—6.) In *People v. Mills* (1968), 40 Ill. 2d 4, 237 N.E.2d 697, the Illinois Supreme Court held that knowledge was an essential element of the crime of possession of narcotics, even though knowledge was never explicitly set forth in the statute as an element of the crime. Likewise in this case, knowledge was an essential element of possession, because the very term "possession" implies a "knowing possession." (Emphasis in original.) See *Mills*, 40 Ill. 2d at 12, 237 N.E.2d at 702.

■ In arguing that the statute is unconstitutional, the defendant set forth in his brief some hypothetical examples which, he argues, demonstrate the unconstitutionality of the statute. This court, however, will not address these hypothetical examples. A party "who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others," but instead must limit himself to the facts of the case at hand. (*Village of Hoffman Estates*, 455 U.S. at 495 & n.7, 71 L. Ed. 2d at 369 & n.7, 102 S. Ct. at 1191 & n.7.) Applying the statute to the facts of the case at hand, the statute is constitutional.

■ The defendant next alleges that the statute at issue is unconstitutional as applied to him because he was arbitrarily arrested and charged with violating the statute. This court disagrees. As noted, the statute does not provide a police officer with the discretion to determine whether a person has violated the statute. The statute clearly

states that a violation occurs when one possesses a certificate of title without complete assignment. Because the defendant possessed the certificate here without complete assignment, the defendant had violated the statute and was properly arrested.

■ The defendant's second contention on appeal is that he was denied due process of law because he was convicted of wholly passive conduct in not completing the certificate of title. The defendant relies upon the United States Supreme Court decision in *Lambert v. California* (1957), 355 U.S. 225, 2 L. Ed. 2d 228, 78 S. Ct. 240, in support of this argument. In *Lambert*, the City of Los Angeles, California, enacted an ordinance requiring a person who had been convicted of a crime punishable as a felony in California to register with the chief of police if he or she remained in the city for more than five days. The Court held that this statute violated due process because it regulated wholly passive conduct and a person would have no notice of his duty to register. *Lambert*, 355 U.S. 225, 2 L. Ed. 2d 228, 78 S. Ct. 240.

The State denies that the defendant's case is analogous to the *Lambert* case. The State argues that the defendant cannot claim ignorance of the law as an excuse for his conduct because the defendant's actions in selling the truck were not wholly passive. Further, the State distinguishes the present statute from the ordinance in *Lambert*, noting that this statute is a State statute, while the ordinance in *Lambert* was merely a city ordinance.

The defendant's case is distinguishable from the *Lambert* case. The Court in *Lambert* noted that "circumstances which might move one to inquire as to the necessity of registration are completely lacking." (355 U.S. at 229, 2 L. Ed. 2d at 232, 78 S. Ct. at 243.) In contrast, under the circumstances here, the defendant should have been put on notice as to the necessity of completing the certificate of title. The statute was, as argued by the State, part of a statutory scheme regulating the ownership and registration of motor vehicles. Further, the defendant admitted that he knew the name on his certificate of title was not the name of the man who sold him the vehicle. The defendant also knew enough to ask Yearwood to put his name on the certificate as lien holder. Under the circumstances here, the defendant cannot claim that his conduct was wholly passive or that he was denied due process of law.

The defendant next contends that the trial court erred in denying his motion for a directed finding of acquittal because the State failed to prove that he had an intent to violate the statute. The defendant claims that he believed the certificate of title was complete and that his transfer was proper. Further, the defendant claims that his good

faith was apparent, since he had consulted with an attorney prior to the transfer. Accordingly, the defendant claims that his conviction should be reversed.

The State contends that the defendant waived this issue on appeal because he did not renew his motion for a directed finding at the close of all the evidence. Assuming, however, that the issue was not waived, the State argues that it did prove that the defendant had the requisite *mens rea*.

■ The determination of whether a defendant had the requisite intent is for the trier of fact. (*People v. Allen* (1983), 116 Ill. App. 3d 996, 1008, 452 N.E.2d 636, 645, *aff'd in part & rev'd in part on other grounds* (1985), 109 Ill. 2d 177, 486 N.E.2d 873.) Intent may be inferred from the actions of the accused, as well as from the surrounding circumstances and, when the facts in a case give rise to more than one inference, a reviewing court should not substitute its judgment for that of the trier of fact unless the inference accepted by the trier of fact is inherently impossible or unreasonable. (*Allen*, 116 Ill. App. 3d at 1008, 452 N.E.2d at 645.) The mental state of knowledge is ordinarily proven by circumstantial evidence, as opposed to direct proof. *People v. Smith* (1984), 124 Ill. App. 3d 243, 248, 464 N.E.2d 685, 688.

■ Here, the defendant admitted that he knew he was purchasing the truck from someone not listed on the certificate of title, yet he claimed that he believed the certificate of title was complete. In addition, despite the fact that the defendant had consulted with an attorney before selling his truck to Yearwood, the defendant never testified that the attorney examined the certificate of title itself or was aware that it was deficient, nor did the attorney testify in the case. Based on the facts of this case, the trier of fact's conclusion that the defendant had the requisite intent was not so inherently impossible or unreasonable as to require reversal.

■ The defendant's last issue on appeal is that the trial court erred in denying his motion to dismiss the indictment. According to the defendant, the indictment charged him with possessing an incomplete certificate of title on September 10, 1986. Defendant claims that he was not in possession of an incomplete certificate of title on that day, however, because he transferred the title to Yearwood on September 10. Therefore, the defendant contends that his conviction should be reversed.

The State responds that the defendant has waived this issue on appeal. In the alternative, the State argues that the defendant did

possess the certificate of title on September 10, 1986, at least until the time he transferred the title to Yearwood.

The defendant's argument is without merit. As the State argued, the defendant was in possession of an incomplete certificate of title on September 10, 1986. Although title passed to Yearwood on that date, until the exchange took place, it is undisputed that the defendant was in possession of the certificate.

Accordingly, for all of the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

BUCKLEY, P.J., concurs.

JUSTICE MANNING, dissenting:

I respectfully dissent. I disagree with that part of the majority's holding which affirms the trial court's finding that defendant possessed the requisite *mens rea* to violate the Illinois Vehicle Code (hereafter Act) (Ill. Rev. Stat. 1987, ch. 95½, par. 1—100 *et seq.*).

However, before I set forth the reasons for my disagreement, I will briefly address the State's contention that the matter is waived on appeal on the grounds that defendant failed to renew his motion for a directed finding at the close of all the evidence. I would invoke the plain error doctrine (see *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124), because the error I perceive to be present here involves the State's failure to prove an essential element of the offense. (*In re Winship* (1970), 397 U.S. 358, 364, 25 L. Ed. 2d 368, 375, 90 S. Ct. 1068, 1072-73.) Where such an error affects substantial rights of the defendant (107 Ill. 2d R. 615(a)), I would dispense with application of the waiver rule.

Concluding then that the issue is not waived, I begin by looking to the applicable portion of the Act, known and cited by the short title "Vehicle Title and Registration Law" (Ill. Rev. Stat. 1987, ch. 95½, pars. 2—121 *et seq.*, 3—100 *et seq.*, 4—100 *et seq.*, 5—100 *et seq.*), which provides: "It is a violation of this Chapter for: *** [a] person to possess any *** certificate of title *** without complete assignment." (Ill. Rev. Stat. 1987, ch. 95½, par. 4—104(a)(2).) Although not explicitly prescribed by statute, I agree with the majority that the mental states of intent, knowledge or recklessness are applicable. Ill. Rev. Stat. 1987, ch. 38, pars. 4—3, 4—4, 4—5, 4—6.

Consequently, as in all criminal cases, the burden is upon the State to prove each element of the offense beyond a reasonable doubt.

I have searched the record. I find no indication that the State adequately addressed the issue of whether the defendant acted with the intent to violate the statute. (See *People v. Yarbrough* (1988), 166 Ill. App. 3d 782, 520 N.E.2d 1002.) To the contrary, in my opinion, the evidence presented by the prosecution to demonstrate that defendant *knowingly possessed* a certificate of title without complete assignment is insufficient to sustain his conviction. *People v. Einoder* (1980), 82 Ill. App. 3d 1079, 403 N.E.2d 641.

In the present case, the record reflects that an individual by the name of Czeslaw was shown on the certificate of title as the title holder, commencing October 20, 1983, the date on which he purchased the truck. The certificate also showed that Czeslaw subsequently sold the vehicle on November 3, 1984, but failed to reflect to whom he had sold it. Defendant testified that he purchased the vehicle from Len Adams in December 1984. However, there is no recordation of this transaction or Mr. Adams' name on the certificate. Where a defendant denies intent to do wrong or knowledge that a wrong has been committed, his knowledge can be inferred from the surrounding facts and circumstances. (See *People v. Williams* (1976), 44 Ill. App. 3d 143, 358 N.E.2d 58.) Here, the surrounding facts and circumstances reveal that a vehicle may have been the subject of three or four sales transactions; yet, only one person's name was reflected on the certificate of title. Thus, contrary to the majority's conclusion, there is no evidence that defendant had notice as to the necessity of completing the certificate of title under the factual matrix here presented. The fact that defendant requested Yearwood to place his name on the certificate as lien holder substantiates his version that counsel had advised him how to perfect his rights under the sales contract (see Ill. Rev. Stat. 1987, ch. 95½, pars. 3—201, 3—202, 3—303), rather than how to complete the certificate of title.

I would find that the acts and declarations of defendant fail to demonstrate an objective to possess an incomplete title. A person acts with intent to accomplish a result or engage in conduct described by the statute when his conscious objective or purpose is to accomplish that result or engage in that conduct. (See Ill. Rev. Stat. 1987, ch. 38, par. 4—4; *People v. Wooff* (1970), 120 Ill. App. 2d 225, 256 N.E.2d 881.) In the instant matter, defendant met Yearwood at his place of employment to negotiate the sales transaction. He consulted with legal counsel and had a sales contract drawn up. Following receipt of $1,000, the first installment of the $7,000 purchase price, defendant delivered to Yearwood a copy of the sales contract, possession of the truck and the certificate of title. It seems to me that these actions ev-

idence an intent on the part of defendant to complete the necessary steps to effectuate a legal agreement and transaction, rather than an intent to forego the requirements of the law. Moreover, when Yearwood informed defendant of his inability to make future payments, he retook possession of the vehicle and had Yearwood execute a release of the previous contract.

Consequently, I believe that the acts and declarations of defendant neither demonstrate a pattern of conduct relating to knowing possession nor infer defendant's knowledge relating to the offense of possession of an incomplete title. Accordingly, I would conclude that because the State has presented clearly insufficient evidence (see *People v. Meredith* (1980), 86 Ill. App. 3d 1136, 409 N.E.2d 70 (which concluded that the appellate court can reverse a finding of fact if such finding was based on insufficient evidence or no evidence)) to prove intent or knowledge on the part of defendant, a key element of the offense, I would reverse the conviction.