THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
EARLIE SPAN, Defendant-Appellant.

Second District   No. 2—86—0082

Opinion filed June 3, 1987.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, and Charles M. Schiedel and Peter L. Rotskoff, both of State Appellate Defender's Office, of Springfield, for appellant.

Robert J. Morrow, State's Attorney, of Geneva (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, and Richard L. Salon, of counsel), for the People.

JUSTICE WOODWARD delivered the opinion of the court:

Following a jury trial, the defendant, Earlie Span, was found guilty of the offenses of residential burglary and possession of a stolen automobile. During the trial, the State had nol-prossed a charge of felony theft that had been pending against the defendant. Defendant was sentenced to six years' imprisonment for residential

burglary and four years' imprisonment for possession of a stolen automobile. Defendant appeals.

The defendant was arrested with codefendant, John Croom, but the two were scheduled to be tried separately. Prior to trial, defendant's attorney informed the court and Croom's attorney that he intended to call Croom as a witness at defendant's trial. Croom's attorney informed the court that in the event Croom was called to testify, he would exercise his fifth amendment right not to testify.

The case was called for trial on September 30, 1985. On that date, the defendant's attorney informed the court that he had been unable to locate two alibi witnesses. The defendant indicated that he did not want a continuance and was willing that the trial proceed without these witnesses. The defendant's attorney then stated:

"Your Honor, I might ask him [the defendant] something else. Is it your choice to proceed today without the testimony of Mr. John Crume [*sic*] who you have indicated was going to clear you of this offense?"

After a discussion between the court, the assistant State's Attorney, and the defendant's attorney regarding the duty of the State to turn over to the defendant any evidence favorable to the defendant, the following colloquy took place:

"THE COURT: But the State has taken the position they're going to dispose of your case before they dispose of the co-defendant's case. They're putting you in a situation where the co-defendant can't be called by your lawyer and made to testify because he has a right to remain silent. Now, I pointed that out to you when you were arraigned, or whoever arraigned you pointed that out, so they're kind of in the driver's seat. They get to choose who goes first, I guess. Now, knowing that, do you want to go ahead today, or would you like to have it continued?

THE DEFENDANT: I would like to just go ahead."

At trial, the State's evidence showed the following: On July 16, 1985, the home of Mrs. Anita Y. Glenn was burglarized. Mrs. Glenn was awakened either by the sound of car doors slamming or the sound of her Cadillac diesel automobile starting up. She then went to her front door and turned on the porch light. She saw her car backing out of the driveway. She observed someone on the passenger side of the car, but she could not see the driver of the car. After she called the police, she noticed that her purse, which contained six $20 bills, credit cards, and her car keys, was missing. The purse was found the next day outside of her neighbor's home. Mrs. Glenn also noticed that

her kitchen window had been opened and the screen cut.

Some 40 minutes later, Illinois State Trooper David Spahn was on patrol when he heard the report of the stolen Cadillac. He then observed Mrs. Glenn's Cadillac at I-290 and Mill Road. He began to follow the vehicle and called for backup officers. He then activated his lights and siren. A chase ensued which reached speeds upwards of 100 miles per hour. After the Cadillac came to a stop, both individuals in the Cadillac left the vehicle and ran in different directions, with State Trooper Spahn and the other officers in pursuit. During the foot chase, Spahn heard gunfire but did not know where it came from. Both individuals, the driver of the car, John Croom, and the passenger, the defendant, were apprehended and taken into custody. They were transported separately to the Addison police station, where they were searched. From Croom, the police recovered a black jacket, gloves, six $20 bills, and assorted jewelry. The defendant had no property in his possession. However, a six-inch sewing gauge with a sharp point was found on the seat in the police car, where defendant had been sitting, which had been searched prior to transporting the defendant.

The defense presented the testimony of Alan Span, the defendant's brother, who stated that shortly after 2 a.m. on July 16, 1985, he heard a knock at the door. He got out of bed, went to the window, and saw a medium-sized car going down the hill. He did not see who was in the car. The defendant did not testify.

The defendant was found guilty of residential burglary and possession of a stolen automobile and was sentenced to a term of six years' imprisonment for residential burglary and a term of four years' imprisonment for possession of a stolen automobile. This appeal followed.

■■ ■ Defendant contends, first, that he was not found guilty of possession of a stolen automobile beyond a reasonable doubt.

Defendant relies on *People v. Evans* (1962), 24 Ill. 2d 11. In *Evans*, the defendant was charged with burglary when stolen property was found in the trunk of the car in which he was a passenger and was convicted. The supreme court reversed his conviction on the basis that Evans was only a passenger in the car, and the stolen property was found in the trunk of the car. Since Evans neither owned the car nor possessed a trunk key, the court, relying on *People v. Abrams* (1935), 360 Ill. 594 (evidence that defendant was riding as a passenger in a recently stolen automobile held to be insufficient to show that the defendant was in possession of the car), concluded that the fact that the stolen property was found in the trunk of the car was not evi-

dence of Evans' guilt.

The State relies on *People v. Williams* (1976), 44 Ill. App. 3d 143. In that case, Williams was convicted of possession of a stolen automobile. He argued on appeal that the State had failed to prove he had knowledge that the car was stolen, a necessary element of the offense. In affirming his conviction, the court stated as follows:

"Defendant's knowledge may be established by proof of circumstances that would cause a reasonable person to believe property had been stolen. [Citation.] Here, defendant was found removing the front clip from a 1970 Buick Riviera which Johnson [the codefendant] had recently acquired. Defendants had already removed the hood, trunk lid, and doors, although there was no evidence that these parts were damaged or required replacement. Even if defendant was not specifically informed that he was 'stripping' a stolen car, this fact should have been apparent to him. He cannot ignore the obvious and then assert his ignorance as a defense.

Moreover, defendant's actions and statement at the time of his arrest indicate he actually knew that the car had been stolen. Defendant's knowledge may be inferred from 'the surrounding facts and circumstances *** including the acts and declarations of the accused.' [Citation.] In the instant case, defendant's flight when approached by police and his subsequent attempt to bribe the officers following his apprehension are inconsistent with his claim of innocence. [Citations.]" 44 Ill. App. 3d 143, 147.

The State also distinguishes *Evans* on the basis that in *Evans*, the court reasoned that neither possession nor knowledge was present under the facts of that case, whereas in the case before us, the defendant was unquestionably aware of the presence of the stolen property in question, *i.e.*, the Cadillac.

A reviewing court may not set aside a jury's verdict unless the evidence is so improbable as to create a reasonable doubt as to defendant's guilt. (*People v. Thompson* (1981), 93 Ill. App. 3d 995, *cert. denied* (1982), 458 U.S. 1109, 73 L. Ed. 2d 1371, 102 S. Ct. 3490.) Here, a high speed chase followed by defendant's flight on foot are inconsistent with defendant's claims of innocence. Although defendant seems to suggest that he ran from the car because he was frightened by gunfire, the origin of those shots was unknown and occurred during the foot pursuit, not before it. We conclude therefore that the defendant was found guilty of possession of a stolen automobile beyond a reasonable doubt.

■ Next the defendant contends that he was not found guilty of residential burglary beyond a reasonable doubt.

In *People v. Housby* (1981), 84 Ill. 2d 415, our supreme court held that, in light of the decision of the United States Supreme Court in *County Court v. Allen* (1979), 442 U.S. 140, 60 L. Ed. 2d 777, 99 S. Ct. 2213, prior Illinois decisions holding that the exclusive and unexplained possession of recently stolen property is sufficient, standing alone and without corroborating evidence, for a conviction of burglary could no longer be applied. The supreme court allowed the presumption only if the following three-pronged test was satisfied: (1) that there be a rational connection between a defendant's recent possession of property stolen in the burglary and his participation in the burglary; (2) that the defendant's guilt of the burglary is more likely than not flowing from his recent, unexplained, and exclusive possession of burglary proceeds; and (3) that there is corroborating evidence of defendant's guilt. *People v. Housby* (1981), 84 Ill. 2d 415, 424.

Defendant argues that no inference of guilt could be drawn that he possessed stolen goods since he was only a passenger in the Cadillac and not in possession of the stolen automobile.

We find the case of *People v. Mallette* (1985), 131 Ill. App. 3d 67, to be instructive on this issue. In *Mallette,* the police, responding to a burglar alarm in an office complex, discovered that several businesses had been broken into. Some 40 minutes later, a station wagon containing office equipment and three individuals was stopped in Chicago for a traffic violation. Mallette, who was a passenger in the car, handed the officer a temporary registration for the car. While one officer was speaking to the driver at the rear of the car, Mallette drove away from the scene with the police in pursuit. After stopping the car in a vacant alley, the defendant, dressed in dark clothing, fled on foot and was apprehended trying to conceal himself in a dark stairway. On the basis of those facts, Mallette was found guilty of burglary. On appeal, the court found that the *Housby* test was satisfied by the evidence, and the permissive inference of Mallette's guilt by the jury was proper.

■ We have examined the record in the case before us and conclude that the evidence in this case satisfies the *Housby* test as well. The evidence in this case showed that in the early morning hours of July 16, 1985, the home of Mrs. Anita Glenn was burglarized. One of the items taken was Mrs. Glenn's purse, which contained the keys to her Cadillac automobile. Some 40 minutes later, State Trooper Spahn received a report of Mrs. Glenn's stolen car and spotted the Cadillac at I-290 and Mill Road. He pursued the vehicle, and after a foot

chase, apprehended the defendant. Given the relatively short period of time between the burglary and the possession of the stolen property, *i.e.*, the Cadillac, we find that the first prong of the *Housby* test is satisfied. See *People v. Moore* (1981), 98 Ill. App. 3d 507.

We have previously determined that the defendant was in possession of the stolen Cadillac. Under similar circumstances, both our supreme and appellate courts have found that joint possession with another can be exclusive possession for the purpose of satisfying the *Housby* test. (*People v. Mallette* (1985), 131 Ill. App. 3d 67, 72; see *People v. Reynolds* (1963), 27 Ill. 2d 523; *People v. Ross* (1981), 103 Ill. App. 3d 883; *People v. Ricketson* (1970), 129 Ill. App. 2d 365.) Therefore, we conclude that the second prong of the *Housby* test is satisfied.

We find the evidence, although not ample, also establishes the third prong of the *Housby* test. We do agree with the defendant that the sewing gauge found in the squad car was not corroborating evidence of the burglary inasmuch as there was no testimony that the gauge was the tool used to cut the screen of the Glenn home, nor was there testimony that it was capable of cutting the screen. However, although the defendant was not driving the Cadillac during the high speed chase, his flight from the scene tends to show consciousness of guilt. (*People v. Harris* (1972), 52 Ill. 2d 558.) Defendant argues that he fled due to the shots he heard. However, Trooper Spahn testified that the shots were heard during the foot chase, thus indicating that the shots did not cause defendant's flight.

The evidence in the record before us having satisfied the *Housby* test, the permissive inference of defendant's guilt from his exclusive possession of recently stolen property was proper, and the burden shifted to the defendant to provide a reasonable explanation of his possession of the proceeds. (*People v. Mallette* (1985), 131 Ill. App. 3d 67, 72-73.) Other than the testimony of his brother that he heard a car drive away sometime after 2 a.m. on the morning of the burglary, defendant presented no explanation for his possession of the stolen Cadillac, and, therefore, the jury was free to infer his guilt. (*People v. Mallette* (1985), 131 Ill. App. 3d 67, 73.) Therefore, we find that the defendant was proved guilty beyond a reasonable doubt of residential burglary.

■ Finally, defendant contends that the trial judge erred when he denied defendant's motion for a new trial on the basis of newly discovered evidence. The newly discovered evidence consisted of an affidavit dated October 17, 1985, in which John Croom, the codefendant, stated that he was alone at the time he burglarized the Glenn home

and stole the Cadillac and that the defendant neither planned nor participated in the burglary with him.

The State contends that the record on appeal is insufficient for consideration of this issue inasmuch as the record on appeal does not contain a transcript of the hearing on the motion for a new trial. The State urges that the defendant's failure to present an adequate record on appeal should result in a waiver of that issue for purposes of this appeal. *People v. Shukovsky* (1987), 151 Ill. App. 3d 966.

Defendant has responded to the State's argument by requesting leave to supplement the record with the missing transcript. The State had filed an objection to the motion, on the basis that the State specifically relied on the absence of that transcript in formulating its argument to the issue regarding the denial of the motion for a new trial.

Supreme Court Rule 329 (87 Ill. 2d R. 329) permits the amendment of the record where there are material omissions or inaccuracies or if the record otherwise is insufficient to present fully and fairly the questions involved. *(People v. Tackett* (1985), 130 Ill. App. 3d 347, 348.) Here, the supplement to the record is necessary for the consideration of the denial of the motion for a new trial and is therefore material. However, where an amendment would be unfair to a party, the courts have refused to permit the amendment. *Denniston v. Skelly Oil Co.* (1977), 47 Ill. App. 3d 1054, 1070 (motion by defendant to amend the record filed after the plaintiff's brief was filed and plaintiff did not argue the merits of the issue but urged the defendant's procedural failure); *Enlow v. Illinois Central R.R. Co.* (1968), 103 Ill. App. 2d 269.

In the case before us, the defendant's brief was filed on December 1, 1986. The State's brief was filed on February 17, 1987, and defendant's reply brief was filed on March 6, 1987. Defendant's motion to supplement the record was filed on April 21, 1987. Although the defendant's attorney states in his motion that he has been attempting to obtain this transcript since February 17, 1987, the State's brief had been long since filed. However, unlike *Denniston* and *Enslow*, the State's brief contains an alternative argument based upon the merits of the motion for new trial issue. Further, we find *People v. Shukovsky* (1987), 151 Ill. App. 3d 966, to be distinguishable from the case at bar inasmuch as no motion to supply the missing transcript was made in that case as it was here. Therefore, we are persuaded that the State will not be unduly prejudiced by the allowance of the supplement to the record, and the defendant's motion will be allowed.

■ We now turn to the merits of whether it was an abuse of discretion to deny the motion for a new trial.

To warrant a new trial on the basis of "newly discovered" evidence, "the new evidence must be of such conclusive character that it will probably change the result on retrial, that it must be material to the issue but not merely cumulative, and that it must have been discovered since the trial and be of such character that it could not have been discovered prior to trial by the exercise of due diligence." *People v. Baker* (1959), 16 Ill. 2d 364, 374.

In *People v. Molstad* (1984), 101 Ill. 2d 128, defendant was found guilty of aggravated battery and criminal damage to property. He filed a motion for a new trial based upon affidavits of his codefendants, four of whom had been convicted and one acquitted of the same charges, which stated that defendant had not been present at the attack on the victim, although one of the State's witnesses testified that he had taken part in the attack. The State argued that the evidence was not newly discovered because the defendant knew about the evidence prior to trial. The motion was denied, and the defendant appealed. Our supreme court held that the evidence was "newly discovered" inasmuch as no amount of diligence could have forced the codefendants to violate their constitutional rights against self-incrimination if they did not choose to do so. Nor did the court find the evidence to be cumulative, *i.e.*, evidence adding nothing to what was already before the jury. (101 Ill. 2d 128, 135-36.) The court reasoned that, although the defendant had raised an alibi defense, the admission of the affidavits would produce new questions to be considered by the trier of fact, especially since they involved the ultimate question, *i.e.*, who was present at the time of the attack. Finally, the court determined consideration of the testimony of the codefendants would likely produce a different result at trial.

We agree with the defendant that under *Molstad*, Croom's affidavit is newly discovered evidence under the test in *People v. Baker* (1959), 16 Ill. 2d 364. Although the trial court did offer to continue the case for the defendant rather than proceed without the testimony of Croom, which offer the defendant refused, it is clear from the record that Croom would not risk incriminating himself by testifying at defendant's trial. Further, the State had clearly indicated that defendant's case would be resolved prior to Croom's. Given the State's position, even had the defendant availed himself of the continuance, the State would still not have disposed of Croom's case, and the delay would have served no purpose.

Nor do we believe that the evidence was cumulative. Croom's affi-

davit that the defendant was not present at either the planning of or the enactment of the burglary of the Glenn home would be balanced against the testimony of the victim, who could not identify the defendant as a passenger in her Cadillac when she observed it leaving her driveway. This evidence presents a new question to be decided by the jury and is therefore not cumulative. See *People v. Molstad* (1984), 101 Ill. 2d 128.

■■ The final question, whether the newly discovered evidence would have been likely to produce a different result at trial, is more difficult to reach. In *People v. Molstad,* the court stated that a better determination of Molstad's guilt could be made if the State's witness's testimony could be balanced against the testimony of the codefendants, particularly since the affidavits were prepared and delivered to Molstad's attorney after their convictions but prior to sentencing, when their own credibility could be a factor in their ultimate penalty. (101 Ill. 2d 128, 133-34.) The record before us gives no indication whether Croom's affidavit was prepared and signed before or after the entry of his guilty plea and sentencing. Further, although the date of Croom's plea and sentencing is not in the record, during the hearing on defendant's motion for a new trial, the prosecutor read into the record the following excerpt from the proceedings in which Croom's guilty plea was taken:

" 'If the State's witnesses were called to testify, Bonita [*sic*] Y. Glenn and Trooper Spon [*sic*], would testify that on or about July 16, 1985, the defendant, John Lamont Crume [*sic*], committed the offense of residential burglary *** in that the defendant, without authority, entered the residence of Anita Y. Glenn with the intent to commit therein a theft, all this occurring in Kane County, Illinois.

I think the proof would further show, Judge, that Mr. Crume [*sic*] was in the company of Earlie Span, that the car keys were taken from a purse by the defendant, and some cash, and the car was then taken and the defendant was later apprehended on the Eisenhower expressway.

THE COURT: Is that substantially correct?

MR LOREK (Croom's attorney): John, he's asking you is that right, what he just said the proof would show.

DEFENDANT CRUME [*sic*]: Yes.' "

Thus Croom's agreement with the factual basis for his guilty plea is directly contrary to his affidavit in which he stated that he operated alone in planning and carrying out the burglary and the theft of Mrs. Glenn's Cadillac.

After reviewing the record, we cannot say that Croom's testimony would be likely to produce a different result at trial in light of his contradictory statements, and, therefore, we decline to find that the trial court abused its discretion in denying the defendant's motion for a new trial.

For all of the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

HOPF and INGLIS, JJ., concur.