THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FRED SANTANA *et al.*, Defendants-Appellants.

First District (1st Division)    Nos. 85—3017, 85—3215 cons.

Opinion filed September 28, 1987.

James J. Doherty, Public Defender, of Chicago (R. H. R. Silvertrust, Assistant Public Defender, of counsel), for appellants.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., James E. Fitzgerald, and Sandra Ramos, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MANNING delivered the opinion of the court:

The defendants Luis Perez and Fred Santana prosecute this appeal from the judgment of conviction and sentence entered by the circuit court of Cook County following a bench trial on an information charging each of them with possession of a stolen motor vehicle in violation of section 4—103(a)(1) of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 4—103(a)(1)), a Class II felony. The court sentenced Luis Perez to seven years' imprisonment and Fred Santana to 5½ years' imprisonment. Defendants set forth several arguments for the reversal of their convictions or alternatively for the vacatur or modification of their respective sentences. One such argument common to both defendants is that the evidence presented at trial was insufficient to prove their guilt beyond a reasonable doubt. Santana fur-

ther maintains that the trial court erred by denying him automatic standing to challenge the legality of the entry into and search of the garage in which the stolen motor vehicle was found and that his sentence constitutes cruel and unusual punishment. Perez further contends that the trial court erred by failing to advise him that he was entitled to treatment under the dangerous drug abuse act. Both defendants contend that the court erred by allowing the State to introduce their criminal records into evidence. We find that each of these contentions lacks merit.

For the reasons that follow, the decision of the trial court is affirmed.

On May 7, 1985, at approximately 1:20 p.m., Officer Guajardo of the Chicago police department received an anonymous phone call informing him that an automobile was being stripped in a garage at 2023 West Thomas in Chicago. The caller also gave him a description of a green van and its license plate number. Officers Guajardo, Kocan and Meister drove to the Thomas address and parked their car in the alley several doors away. As they approached the garage, they heard "mechanical noises, banging of hammers and clanging noises of a ratchet wrench." At trial, Officer Kocan testified that he heard a voice from the garage say something to the effect that, "We will get a good buck for these hot seats." The officers attempted to look in through the windows, but the windows had recently been painted black and were still sticky from the fresh paint. They opened the side door of the garage, but could not gain entry because the rear end of an automobile was up against the door. Officer Kocan testified that he observed that the lock on the trunk of the car had been pulled. The hood of the car was lying alongside the wall and the front of the car was jacked up on one end. The front seats were out of place and the ignition switch had been pulled and half-removed. When he entered the garage, the car doors were open, with Luis Perez leaning into the front passenger side and Fred Santana leaning into the front driver's side with their arms moving.

The officers identified themselves as they crawled over the rear of the car and told the men to put their hands on the car. Officer Kocan had "strong suspicions" that the car was stolen and the defendants were arrested for possession of a stolen motor vehicle. A radio check verified that the automobile had been reported stolen on May 6, 1985. The van that the anonymous caller had referred to was found approximately one-half block away and belonged to Luis Perez.

Luis Perez testified that on the day in question, he was trying to locate a friend named George Gonzales and was told by George's girl-

friend that he could be found at 2023 West Thomas. On his way there he ran into Fred Santana and Fred's brother, David. He offered them a ride home but told them he had to make a stop first. They went to the Thomas address, and Fred and David remained in the van while Luis went to find George. Luis went to the house and was told that George was in the garage. He went to the garage, but George wasn't there. A man named Rivera, who was standing next to a car that was partially disassembled, told him George would return shortly.

Fred Santana's testimony was essentially the same as that of Luis. He stated that as time went by, he and his brother decided to walk home. They went to the garage to find Luis and to give him the keys to his van. Luis told them that George would be returning shortly and that they should wait. Shortly thereafter the police arrived. Fred testified that at the time the police entered the garage he was standing talking with Luis Perez.

Before trial, Fred Santana filed a motion to quash the arrest and suppress evidence alleging that his arrest was unlawful because the police had neither a search warrant nor probable cause to arrest him. The trial court denied the motion, stating that although the search was unlawful, the defendant did not have standing to object to the legality of the search.

■■ On appeal, both defendants contend that the State failed to prove the elements of the crime beyond a reasonable doubt. To sustain a conviction for the offense charged, the State must prove that the defendants had possession of the vehicle and that they had knowledge that it was stolen. (Ill. Rev. Stat. 1985, ch. 95½, par. 4—103(a)(1).) A person has actual possession over a thing when he has immediate and exclusive control over it. (*People v. Valentin* (1985), 135 Ill. App. 3d 22, 31, 480 N.E.2d 1351.) The fact that numerous people may be present does not affect the exclusivity of control. The term "exclusive" is relative and joint possession is sufficient to constitute exclusive possession. *People v. Clark* (1979), 73 Ill. App. 3d 85, 89, 391 N.E.2d 576.

■■■ The defendants argue that the evidence used to convict them was circumstantial and that their mere presence in the garage does not constitute possession of the vehicle. The State maintains that the presence of the defendants coupled with the testimony that the defendants were leaning into the car with their arms moving is sufficient to support the conclusion that the defendants were in possession of the automobile. To sustain a conviction based on circumstantial evidence the trier of fact need not be satisfied beyond a reasonable doubt as to each link in the chain of circumstances relied upon to es-

tablish guilt. It is sufficient if all the evidence, taken together, satisfies the fact finder of the accused's guilt. (*People v. Daniels* (1983), 113 Ill. App. 3d 523, 528, 447 N.E.2d 508.) Possession and knowledge are questions of fact to be resolved by the trier of fact and such findings will not be disturbed on appeal unless the evidence is so palpably contrary to the verdict or so unreasonable, improbable or unsatisfactory as to create a reasonable doubt of guilt. (*People v. Valentin* (1985), 135 Ill. App. 3d 22, 31, 480 N.E.2d 1351.) We feel that the evidence, considered as a whole, can support a finding that the defendants were in possession of the stolen vehicle and will not disturb the trial court's findings.

■■ Defendant Santana argues that the State did not prove that he had knowledge that the automobile was stolen. Direct proof of knowledge that the property is stolen is not necessary. A defendant's knowledge that the vehicle was stolen can be inferred from the surrounding facts and circumstances which would lead reasonable people to believe that the property was stolen. (*People v. Johnson* (1978), 64 Ill. App. 3d 1018, 1021, 382 N.E.2d 85.) In the instant case the windows of the garage were painted black and the lock on the trunk of the car and the hood of the car had been removed. The front seats were out of place and the ignition switch had been pulled. Luis Perez admitted that when he saw the condition of the car he knew that it was stolen. Even though Fred Santana may not have been specifically informed that the car was stolen, this fact should have been apparent to him from the circumstances.

■■■ Defendants also maintain that the State's introduction of their criminal records was highly improper impeachment as they were not relevant to the crime. Perez argues that the State's only intention was to inform the court that the defendants had a propensity to commit crime. This argument is unpersuasive. A defendant's criminal convictions can be introduced into the record to impeach the credibility of the witness, provided certain conditions are met. (*People v. Montgomery* (1971), 47 Ill. 2d 510, 266 N.E.2d 338.) Generally, evidence of a prior conviction is admissible for impeachment purposes unless it is determined that the probative value of such evidence is substantially outweighed by the danger of unfair prejudice. (*People v. Martinez* (1978), 62 Ill. App. 3d 7, 15, 377 N.E.2d 1222.) In a bench trial, the court is presumed to have relied upon proper evidence and disregarded incompetent evidence. (*People v. Mays* (1980), 81 Ill. App. 3d 1090, 1097, 401 N.E.2d 1159, 1164.) In the present case, the judge made it clear that the prior convictions were being considered as to the credibility of the witnesses. Consequently, we find that the defend-

ants' previous convictions were properly admitted into evidence.

Fred Santana further contends that it was error for the trial court to deny his motion to suppress and that he should be given "automatic standing" to challenge the search pursuant to *Jones v. United States* (1960), 362 U.S. 257, 4 L. Ed. 2d 697, 80 S. Ct. 752. In *Jones*, the United States Supreme Court held that anyone who was legitimately on the premises where a search or seizure occurred should be able to challenge its legality by a motion to suppress, without having to establish a proprietary or possessory interest in the premises searched or the things seized. The concept of "automatic standing" was based on the rationale that if the accused was not granted automatic standing when the offense charged was the possession of the property seized, he would have to admit an element of the offense in order to have standing to challenge the search and seizure. However, the automatic standing rule of *Jones* was explicitly overruled in *Salvucci v. United States* (1980), 448 U.S. 83, 65 L. Ed. 2d 619, 100 S. Ct. 2547. In *Salvucci*, the United States Supreme Court held that defendants charged with crimes of possession can only claim the benefits of the exclusionary rule when their own fourth amendment rights have been violated.

■■ Santana now urges that we reject the Federal position and retain the automatic standing rule of *Jones*. However, Illinois law regarding this issue is well settled. Our views in this evidentiary area stand in accord with Federal decisions. (*People v. McNeil* (1972), 53 Ill. 2d 187, 290 N.E.2d 602.) In order to have standing to contest the legality of a search, a defendant must show that his own fourth amendment rights have been violated. To claim fourth amendment protection he must show not only that the search was illegal, but also that he had a legitimate expectation of privacy in the area searched. (*People v. Keller* (1982), 93 Ill. 2d 432, 444 N.E.2d 118.) Whether one has a legitimate expectation of privacy in a place is measured by an objective standard. *People v. Bolden* (1987), 152 Ill. App. 3d 631, 635, 504 N.E.2d 835.

■■ In the present case, the defendant did not own or lease the garage; hence, he did not have a proprietary or possessory interest in it. This record is silent regarding the identification of the actual owner of the garage, and there is nothing in the record reflecting whether or not the defendants were legitimately on the premises. Consequently, we conclude that Fred Santana had no expectation of privacy in the premises and lacks standing to assert a violation of his fourth amendment rights.

■■ Santana next contends that his sentence of 5½ years' im-

prisonment constitutes cruel and unusual punishment. As support for this position he states that the crime for which he was convicted was not a violent one and that he has "turned over a new leaf" since his release from prison in 1983. The State maintains that this sentence is not excessive since the defendant qualified for an extended sentence pursuant to section 5—5—3.2(b)(1) of the Unified Code of Corrections (Ill. Rev. Stat. 1983, ch. 38, par. 1005—5—3.2(b)(1)). That statute provides that the court may impose an extended-term sentence upon any offender who is convicted of a felony after having been previously convicted in Illinois of the same or greater class felony within the last 10 years.

Fred Santana had been convicted of two such felonies in the 10 years prior to the date of the instant offense. In 1975, he was convicted of armed robbery and received a sentence of four to eight years in the Illinois Department of Corrections. In 1976, he was convicted of attempted murder, for which he received one to three years in the Illinois Department of Corrections.

The sentence to be imposed in an individual case is left to the discretion of the trial judge, after considering the facts and circumstances of the case and the defendant's prior history. Absent an abuse of discretion, a reviewing court will not reduce that sentence. (*People v. Almo* (1985), 108 Ill. 2d 54, 70, 483 N.E.2d 203; *People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882.) As we find no abuse of discretion in the present case, we cannot modify the sentence imposed by the trial court.

■■ Defendant Perez next contends that the trial court erred in not advising him of his right to elect treatment under the Alcoholism and Substance Abuse Act, which requires the court to advise a defendant who the court has reason to believe is an addict or who states he is an addict, of the possibility of treatment in lieu of incarceration. (Ill. Rev. Stat. 1985, ch. 111½, par. 6323). Perez maintains that because the presentence investigation report indicated that he smoked marijuana daily and used cocaine the trial court was required to inform him of the possibility of treatment under the Act.

An addict is "any person who habitually uses any drug, chemical, substance or dangerous drug other than alcohol so as to endanger the public morals, health, safety or welfare or who is so far addicted to the use of a dangerous drug or controlled substance other than alcohol as to have lost the power of self control with reference to his addiction." (Ill. Rev. Stat. 1985, ch. 111½, par. 6304.1.) "Reason to believe" as used in this statute is the equivalent of probable cause. (*People v. Futia* (1983), 116 Ill. App. 3d 68, 72, 452 N.E.2d 109.)

Whether there is reason to believe that an individual is an addict must be determined from the facts brought to the attention of the trial court. *People v. Braje* (1985), 130 Ill. App. 3d 1054, 1062, 474 N.E.2d 1364.

█ In the present case, the only evidence presented to the court regarding Perez's drug usage was the presentence report. That report indicated that although the defendant smoked marijuana daily and occasionally used cocaine, he was in good mental and physical health. The defendant himself never indicated that he was an addict. Based upon the total absence of facts indicating that defendant Perez had a habitual and uncontrollable craving for an addicting drug, there was no reason to believe that the defendant was an addict and it was not error for the trial court not to advise him of alternative treatment under the Act.

For the foregoing reasons, the judgment of the trial court is affirmed. As part of our judgment, we grant the State's request that the defendants be assessed $75 as costs for this appeal.

Judgment affirmed.

CAMPBELL and BUCKLEY, JJ., concur.