THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHARLES BROWN, Defendant-Appellant.

First District (5th Division)   No. 1—87—0108

Opinion filed March 31, 1989.—Modified opinion filed June 30, 1989.—Rehearing denied July 3, 1989.

278

Randolph N. Stone, Public Defender, of Chicago (Vicki Rogers, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Paula Carstensen, Special Assistant State's Attorney, and Inge Fryklund and Richard G. Cenar, Jr., Assistant State's Attorneys, of counsel), for the People.

JUSTICE COCCIA delivered the opinion of the court:

Defendant Charles Brown appeals from his conviction under the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 4—103(a)(1)) for possession of a stolen motor vehicle. We affirm.

Charles Brown and DeWayne Thomas were charged by indictment with possessing Dennis Prisant's 1984 Oldsmobile, vehicle identification number 1G3AZ57YXEE320794. Brown was tried without a jury on October 27, 1986. It was stipulated at trial that an agent from Seltzer Leasing Corporation of Northbrook, if called, would testify that in April 1986, Seltzer owned a 1984 Olds Coupe, vehicle identification number 1G3AZ57YXEE320794, Illinois license plate number SLC90, and that it leased this car to Dennis Prisant on April 22 and 23. It was also stipulated that Prisant, if called, would testify that he was in possession of this vehicle on April 22, 1986, that he gave no one permission to possess it, and that the car was in normal operating condition the last time he saw it.

The sole witness for the prosecution was Officer Calvin Blanks of the Chicago police department. Officer Blanks testified that he and his partner were on routine patrol at approximately 11:50 p.m. on April 22, 1986. Both officers were in plain clothes, and Blanks was driving their unmarked vehicle. They received a report over the radio that an auto was being stripped in the alley behind 4107 West Harrison in Chicago. They entered the alley and headed west with their lights off. Blanks observed a parked auto with two men next to it. Although this vehicle's lights also were off, lighting conditions were good, because of a nearby streetlamp. Blanks stopped his car no more than 15 feet away from the other car, which was facing him. He noticed that one man, whom he identified in court as Brown, was stooped over the left front portion of the parked vehicle, next to the front tire. The other man was at the left rear portion of the vehicle, near the rear tire. Blanks observed that Brown was in the process of taking the left front tire off the car. Blanks exited the unmarked squad car and announced his office. After this announcement, Brown stood up straight, with the tire still in his hands, and turned toward Blanks. The latter walked toward Brown. He "froze" for a few seconds, looking directly at Blanks, then dropped the tire and fled.

The other suspect also ran, and Blanks and his partner pursued them. Brown ran south, then turned west into an adjacent alley. He climbed a nearby fence and went into a yard. During the chase, Blanks maintained a distance of no more than 10 feet behind Brown. Blanks told his partner to follow Brown, while he continued down the alley and turned onto the street. Blanks then headed east. No more

than 10 seconds elapsed between the time Blanks lost sight of Brown in the alley and the time he saw Brown emerge from a gangway, enter the street, and turn west, some 40 feet away from him. Brown continued running for approximately 15 feet, then stopped and began to walk. No one else was on the street at that time. Blanks took Brown into custody, noting that he was breathing heavily.

After handcuffing Brown, Blanks conducted a search. He felt a hard object in Brown's left jacket pocket, which on examination proved to be four Oldsmobile hubcap emblems. Blanks placed Brown in the unmarked squad car and then searched the location surrounding the parked car, where he first saw Brown. The car had Illinois license plates, which read "Sam Lincoln Charlie 9090." It was jacked up, with only one tire remaining. Blanks recovered three more tires and one spare in the area. He stated that, "On all the tires the hubcaps had been removed" and that the emblems had been removed from the hubcaps.

Blanks then transported Brown to the Eleventh District Station. Later that morning, at about 1:30 a.m., Blanks and his partner gave Brown the *Miranda* warnings and then interrogated him. Brown stated that he understood his rights and then waived them. Brown denied stealing the car. But he confessed that he and the other suspect rode the bus to Cermak and Cicero, where they saw the vehicle in question. The other suspect pried open the window of that car, and Brown reached in to open the door. The other suspect then drove him back to Chicago in the stolen car. Officer Blanks further testified that the stolen car and its hubcap emblems were returned to the owner shortly after Brown's confession. When Officer Blanks' testimony was completed, the State rested, and Brown's motion for a directed finding was denied.

Charles Brown's mother, Betty Brown, testified in his behalf. Mrs. Brown stated that she and her son lived at 4151 West Fifth Avenue. At about 11:45 p.m. on April 22, 1986, she asked him to get her a cheeseburger from Mary's restaurant, which was located at the corner of Fifth Avenue and Pulaski. From her window, she watched her son head toward the restaurant. Before she lost sight of Charles, she saw him stop and speak with several young men. While Brown was on his errand, one DeWayne Thomas stopped by the former's home. Thomas left when Brown's mother informed him that Charles was not home. Mrs. Brown also testified that there was no streetlamp in the alley where the crime occurred.

Vernon Benson, Claude Sanders, and Sharon Shoulders testified for Brown. They all knew him for several years before the incident

and stated that they each saw him on April 22, 1986, at approximately 11:45 p.m. Benson said that he and Brown had a conversation at the corner of Keeler and Fifth Avenue. Brown told Benson that he was going to Mary's for his mother and left in that direction after five or six minutes. Sanders saw Brown on his way home from work. At the northwest corner of Pulaski and Fifth Avenue, Brown, Sanders, and a man named Carl spoke briefly. Mary's was closed, so Brown proceeded down Fifth Avenue. After finishing his conversation with Carl, Sanders went home. Shoulders was going home on the Pulaski bus from a friend's house. She got off the bus at Fifth Avenue. A number of people, including Brown, had congregated there. She greeted Brown and then left.

DeWayne Thomas testified pursuant to subpoena. On the evening of April 22, 1986, Thomas said that he went alone to Berwyn and stole a black Oldsmobile Toronado. He returned to Chicago and went by Brown's home. Mrs. Brown told him that her son was not there. He found a man named Jerome to help him strip the stolen car, and they were caught in the act by the police. On cross-examination, he admitted that he pleaded guilty to this offense.

Finally, Brown himself testified. He stated that, at about 11:45 p.m. on April 22, 1986, he was home with his mother. She asked him to get her a cheeseburger. On his way to Mary's restaurant, he saw Benson and stopped to speak with him, and others, for approximately five minutes. When he got to Mary's, he discovered that it was closed, so he decided to return home. He spoke with Shoulders and Sanders along the way. Thereafter, while walking on the north side of Fifth Avenue between Karlov and Kedvale, he was arrested. Brown denied being in the alley or stripping a car therein. He further denied that Officer Blanks found anything in his coat or that he rode the bus to Berwyn with Thomas. Brown recalled being read the *Miranda* warnings, but he denied confessing to the crime. The defense rested after Brown's testimony. At the end of closing arguments, the trial judge found Brown guilty.

Brown's post-trial motion was heard on December 8, 1986. His attorney argued only that Brown was not in possession of the stolen car within the meaning of the statute, since possession of a vehicle's tire is not equivalent to possession of the vehicle itself. The judge denied the motion and sentenced Brown to 3½ years in the Illinois Department of Corrections.

## I

Brown has assigned four errors for our review. First, he argues

that his conduct did not fall within the purview of the statute under which he was convicted. Section 4—103 (Ill. Rev. Stat. 1985, ch. 95½, par. 4—103) provides in part:

"(a) It is a violation of this Chapter for:

(1) A person not entitled to the possession of a vehicle or part of a vehicle to receive, possess, conceal, sell, dispose, or transfer it, knowing it to have been stolen or converted; additionally the General Assembly finds that the acquisition and disposition of vehicles and their essential parts are strictly controlled by law and that such acquisition and disposition are reflected by documents of title, uniform invoices, and bills of sale. It may be inferred, therefore that a person exercising exclusive unexplained possession over a stolen or converted vehicle or an essential part of a stolen or converted vehicle has knowledge that such vehicle or essential part is stolen or converted, regardless of whether the date on which such vehicle or essential part was stolen is recent or remote."

Brown claims that a tire and hubcap emblems are not "essential parts" of a vehicle, so he cannot be guilty of the offense charged.

■■ However, the plain language of the statute indicates that possession of the vehicle itself is sufficient. In order to sustain a conviction under the statute, it has been held that the State must prove that the defendant had possession of the vehicle. (See *People v. Santana* (1987), 161 Ill. App. 3d 833, 837, 515 N.E.2d 715, 718.) An individual has actual possession over an object when he has immediate and exclusive control over it. Possession is a question of fact, to be resolved by the trier of fact, and such a finding will not be disturbed on appeal unless the evidence is so palpably contrary to the verdict or so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of guilt. *Santana*, 161 Ill. App. 3d at 837-38, 515 N.E.2d at 718-19.

In *People v. Davenport* (1988), 176 Ill. App. 3d 142, 530 N.E.2d 1118, defendants were convicted under the statute at issue here, and their convictions were upheld on appeal. The arresting officers observed defendants removing the lug nuts from a vehicle in a vacant lot. As the arresting officers exited their car, defendants dropped a four-way lug wrench to the ground and walked toward the officers. One officer testified at trial that the defendants were using the same wrench that the complaining witness identified as one he had kept in his trunk. The officer also testified that a distinctive wheel lock, which complainant identified, was found on the person of one defendant. The appellate court concluded that defendants' conduct, in at-

tempting to remove tires from the vehicle with tools that had been taken therefrom, constituted possession under the statute. *Davenport,* 176 Ill. App. 3d at 145, 530 N.E.2d at 1120.

■ In our case, Officer Blanks observed Brown with one of the stolen vehicle's tires in his hands. Brown then dropped it and ran. When Brown was apprehended, Officer Blanks found four of the vehicle's hubcap emblems on his person. Given the factual similarities between this case and *Davenport,* we do not see how a different result could be justified here. We are also mindful of *Santana's* teaching that possession is a question of fact. Therefore, the trial judge properly found that Brown was in possession of the stolen vehicle within the meaning of the Illinois Vehicle Code.

■ Second, Brown argues that the State's evidence failed to show that he was one of the perpetrators of the crime beyond a reasonable doubt. Specifically, Brown points to discrepancies between Officer Blanks' trial testimony and his testimony at the hearing on Brown's motion to suppress; the facts that the hubcap emblems were not produced at trial and that Brown denied confessing; and Officer Blanks' allegedly insufficient identification testimony, along with Brown's alibi testimony.

The hearing on Brown's motion to quash his arrest and suppress evidence was held on August 22, 1986. At the hearing, Officer Blanks testified that after he emerged from the alley, he saw Brown running toward him and that he did not see Brown come out of a gangway. (The trial judge denied Brown's motion.) At trial, as noted above, Blanks testified that he saw Brown emerge from a gangway, run, stop, and then walk toward him. Brown's counsel did not question Blanks regarding this inconsistency at trial.

In *Davenport,* defendants contended that the trial judge should not have given credence to the testimony of an arresting officer, because he was mistaken as to the date of the arrest and the position of the defendants when he observed them removing lug nuts from a stolen car. But the appellate court decided that these errors were minor and that they in no way impeached the officer's entire testimony. The court reasoned that in a bench trial, it is the trial judge's duty to determine the credibility of the witnesses and the weight to be given their testimony, and that this determination is entitled to great weight. (*Davenport,* 176 Ill. App. 3d at 145, 530 N.E.2d at 1120.) The factual similarities between our case and *Davenport* lead us to conclude, again, that Brown's argument must be rejected.

In light of *Davenport,* we are also compelled to conclude that it was for the trial judge to determine whether he believed Officer

Blanks' testimony concerning the return of the hubcap emblems to the stolen vehicle's owner before trial, and whether he believed Officer Blanks' testimony regarding Brown's confession. Where the evidence merely conflicts, a reviewing court will not substitute its judgment for that of the trial judge, who heard the evidence. *Davenport,* 176 Ill. App. 3d at 145, 530 N.E.2d at 1120.

Brown also asserts that the State failed to contradict his alibi evidence and that the identification by Officer Blanks was suspect. But where identification of a defendant is at issue, the testimony of a single witness is sufficient to support a conviction, even in the presence of alibi testimony, as long as the witness is credible and viewed the accused under circumstances that would permit positive identification. (*People v. Thomas* (1986), 145 Ill. App. 3d 1, 7-8, 495 N.E.2d 639, 643.) The trier of fact need not accept a defendant's alibi testimony over a positive identification, even if the alibi testimony was given by a greater number of witnesses. The test for a positive identification is whether the witness was close enough to the accused, for a sufficient length of time, under circumstances that provided adequate opportunity for observation. (*Thomas,* 145 Ill. App. 3d at 8, 495 N.E.2d at 643-44.) It must be remembered that once a defendant has been found guilty, judicial review of the evidence is to be considered in the light most favorable to the prosecution. (See *People v. Bedony* (1988), 173 Ill. App. 3d 613, 618, 527 N.E.2d 916, 918.) This rule also applies when the sufficiency of identification testimony is called into question. *People v. Lilly* (1985), 139 Ill. App. 3d 275, 281-82, 487 N.E.2d 414, 419.

In view of these principles, it is clear that the evidence was sufficient to support Brown's conviction. The trial judge concluded that Officer Blanks was a credible witness, for he stated: "I believe the police officer and I believe that he is absolutely an excellent witness, I believe his testimony is one hundred percent." Moreover, Blanks was no more than 15 feet from Brown, and he looked Brown in the eye for several seconds, under light from a nearby streetlamp. Mrs. Brown testified that there was no streetlamp in the vicinity, but we must resolve this evidentiary conflict in the State's favor, since Brown was found guilty. Thus, it is of no moment that Officer Blanks was outnumbered by Brown and his alibi witnesses.

## II

Brown has assigned two additional errors for our consideration. In the first place, he argues that the statute under which he was convicted is unconstitutional, in that it violates his constitutional rights to

due process of law and proportionate penalties. Similar arguments were rejected by this court in *People v. Carlyle* (1987), 159 Ill. App. 3d 964, 513 N.E.2d 61, where we held that the statute challenged by Brown is constitutional. In the second place, he contends that the State failed to prove an essential element of its case, namely the identity of the stolen car he supposedly possessed.

■ However, Brown failed to specify both of these alleged errors in his post-trial motion, contrary to section 116—1(c) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 116—1(c)). Thus, he has waived them. The waiver rule applies with equal force when the constitutionality of a penal statute is attacked for the first time on appeal. (See *Carlyle*, 159 Ill. App. 3d at 968, 513 N.E.2d at 63; see also *People v. Nester* (1984), 123 Ill. App. 3d 501, 507, 462 N.E.2d 1011, 1016.) In *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124, the supreme court discussed the waiver rule, as well as the principles which underlie it, at length. The court also explained the plain error exception to the waiver rule, along with its rationale. This exception only applies if the evidence is closely balanced. (See *Enoch*, 122 Ill. 2d at 198-99, 522 N.E.2d at 1135-36.) Here, the foregoing analysis demonstrates that the evidence is not closely balanced. Therefore, the plain error exception is inapplicable, and the waiver rule forecloses our consideration of Brown's arguments regarding the constitutionality of the statute in question and the alleged failure of the State's proof concerning the identity of the stolen vehicle.

■ ■ Brown contends, however, that the State's failure to prove a material allegation of an indictment, in this case the identity of the stolen car, may be raised for the first time on review. He relies upon *People v. Walker* (1955), 7 Ill. 2d 158, 130 N.E.2d 182, to support his contention. Our reading of the supreme court's more recent opinion in *Enoch* leads us to a different conclusion. The learning of *Enoch* is that a defendant must object at trial and then specify the objection in his post-trial motion, if he wishes to argue it on appeal; otherwise, the waiver doctrine forecloses appellate review of alleged errors that could have been raised during trial. (See *Enoch*, 122 Ill. 2d at 186, 522 N.E.2d at 1130.) Of course, the waiver doctrine does not apply if the circuit court plainly erred. The plain error exception is not applicable here because, as previously mentioned, the evidence is not closely balanced. Furthermore, were we to hold the waiver doctrine inapplicable, *Enoch's* rationale would be violated, for Brown had the opportunity to raise this issue in the circuit court yet failed to do so. Thus, the issue is waived.

Notwithstanding *Enoch*, Brown's claim that the State failed to

prove the stolen vehicle's identity beyond a reasonable doubt does not persuade us. As set forth above, the indictment identified the stolen vehicle by manufacturer, year, and vehicle identification number. And the parties stipulated to the identical manufacturer, year, and vehicle identification number at trial, along with the Illinois license plate number. Officer Blanks testified at trial that he found the missing Oldsmobile hubcap emblems on Brown and that the stolen vehicle had Illinois license plates. Officer Blanks apparently misspoke when he stated that the license plates read "Sam Lincoln Charlie 9090" rather than "SLC 90" as stipulated. But this minor discrepancy does not render the State's proof regarding the identity of the stolen vehicle possessed by Brown insufficient. See *People v. Williams* (1986), 143 Ill. App. 3d 658, 493 N.E.2d 362; see also *People v. Daniels* (1983), 113 Ill. App. 3d 523, 447 N.E.2d 508.

In conclusion, two of Brown's arguments were waived, and the two arguments that he did not waive have failed to persuade us that the trial judge erred. Accordingly, Brown's conviction must be upheld.

Affirmed.

MURRAY, P.J., and LORENZ, J., concur.