THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RENARD ANDERSON, Defendant-Appellant.

First District (6th Division)    No. 1—95—0194

Opinion filed February 20, 1998.

ZWICK, J., dissenting.

Law Offices of Steven D. Imparl, of Chicago (Steven D. Imparl, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Susan R. Schierl, and Joseph A. Parisi, Assistant State's Attorneys, of counsel), for the People.

JUSTICE QUINN delivered the opinion of the court:

Following a bench trial, defendant Renard Anderson was convicted of possession of a stolen motor vehicle and sentenced to six years' imprisonment. Defendant appeals, contending that he was not proven guilty beyond a reasonable doubt. We reverse.

Velyne Zumm testified that on July 20, 1994, she owned a 1989 Trans Am automobile and during that evening it was stolen from her

driveway. The car was in good condition at that time, but when she saw the car next at the police auto pound on July 22, the passenger door lock was punched, the trunk lock was punched, the steering column was torn apart, the car had to be started with a screwdriver and her stereo was missing. There was also meat in the back seat of the car.

Officer Anthony Bartolomei testified that at about 1:30 a.m. on July 22, 1994, he and Officer Alex Ramano were in plainclothes in an unmarked vehicle at 16th and Halsted Streets in Chicago Heights, when they observed a dark blue Pontiac Trans Am going eastbound. As the car passed in front of them, Bartolomei noticed that the driver looked like a man wanted in a shooting earlier in the evening. The officers activated their emergency equipment and followed the car, in which defendant was a passenger. Both occupants looked back when the officers put on the emergency lights. The driver of the Pontiac did not stop but accelerated, traveling about 60 miles per hour in a posted 25-mile-per-hour zone.

The officers followed the car, which traveled through a red light and almost hit a group of people standing outside a tavern. The car then went around a corner and almost hit a second group of people outside another tavern. After proceeding several more blocks, the car was driven onto the sidewalk where it collided with a planter. Both the driver and defendant got out of the car and ran, but they were apprehended. The officers learned the car was stolen and examined the car, which had the trunk lock and the passenger side door lock punched out. The steering column cover was ripped out on the driver's side of the column, and the radio was missing with damage to that area. There were no keys in the ignition and two screwdrivers were found in the car.

Officer Bartolomei spoke with defendant after his arrest, and defendant gave a statement which was reduced to writing. The statement recited:

"I was in Dolton at Fairway Foods. I went inside to boost some meat. I met up with a guy I recognized who was boosting also. I asked him if he had a car. He told me yeah, he did.

He asked me if I was going to boost anything. I said yeah I was. He told me when I come [sic] out that he would have the car running on the side of the store.

He walked out, waited for me to come out.

I left the store about five minutes later. He got into a blue Pontiac Grand Am that he was driving.

We drove to an unknown block around 127th Street in Chicago and sold the meat I took from the store.

We then drove to another area in Chicago and bought two bags of rock cocaine. We smoked the dope inside and we wanted more.

At this point the car dies out and I asked him where's [*sic*] your keys. He told me that he didn't need his keys because it was started from the column.

He then stuck a screwdriver in the left side of the column and restarted the car.

He then drove to a Jewel Food Store where he again boosted four packages of meat and we decided to come south to Chicago Heights and try to sell the meat, to get more dope.

It was shortly after this that the police got behind us.

He floored the gas pedal in [an] effort to run from the police. I told him don't run, we're caught, just stop. He said no man, I'm dirty. And then drove into a yard where we both jumped out of the car and were both caught by the police."

Officer Ramano testified that he apprehended defendant after the car chase. When he caught defendant, defendant said, "I wasn't with him; I wasn't in that car."

The court found defendant guilty, concluding that defendant had knowledge that the car was not the property of its driver and that it was not obtained in a lawful manner, yet defendant persisted in going through transactions with his accomplice and remained in joint possession of the car.

On appeal defendant argues that since he was only a passenger in the car, he did not possess the car and, therefore, could not be convicted of possession of a stolen motor vehicle. Under the facts of this case, we agree.

■ A person commits the offense of possession of a stolen motor vehicle when he possesses that vehicle knowing it to have been stolen and he is not otherwise entitled to its possession. *People v. Abdullah*, 220 Ill. App. 3d 687, 690, 581 N.E.2d 67 (1991). Section 4—103(a)(1) of the Illinois Vehicle Code provides in pertinent part:

"It is a violation of this Chapter for:

(1) A person not entitled to the possession of a vehicle or essential part of a vehicle to receive, possess, conceal, sell, dispose, or transfer it knowing it to have been stolen or converted ***. It may be inferred, therefore that a person exercising exclusive unexplained possession over a stolen or converted vehicle or an essential part *** has knowledge that such vehicle *** is stolen or converted, regardless of whether the date on which such vehicle *** was stolen is recent or remote." 625 ILCS 5/4—103(a) (West 1994).

■ Here, the trunk lock and passenger lock were punched out, the steering column was visibly damaged and the radio had been torn

out. The driver sped away from the police when they attempted to stop the car. Defendant initially denied being in the car when arrested by the police but then admitted knowing that the car had to be started with a screwdriver. This evidence is more than sufficient to prove that defendant knew that the car was stolen.

The evidence that defendant possessed the car is much more problematic. The State argues that defendant jointly possessed the stolen motor vehicle with the driver, citing *People v. Tucker*, 186 Ill. App. 3d 683, 694, 542 N.E.2d 804 (1989), and *People v. Santana*, 161 Ill. App. 3d 833, 835, 515 N.E.2d 715 (1987).

In *Santana*, the police arrested the two defendants as they were both stripping a motor vehicle that was parked in a garage. The car had been stolen the previous day. This court affirmed both defendants' convictions for possession of a stolen motor vehicle, holding, "[a] person has actual possession over a thing when he has immediate and exclusive control over it. [Citation.] The fact that numerous people may be present does not affect the exclusivity of control. The term 'exclusive' is relative and joint possession is sufficient to constitute exclusive possession. [Citation.]" *Santana*, 161 Ill. App. 3d at 837.

In *People v. Tucker*, defendant Ester was seen exiting a motor vehicle from the passenger side. Ester then acted as a lookout while the driver stripped the vehicle. When the police arrested Ester, he had a tool suitable for stripping a motor vehicle on his person. The car had been stolen one day earlier. This court affirmed Ester's conviction of possession of a stolen motor vehicle, saying:

> "A defendant who is a passenger in a stolen motor vehicle may be found guilty of possession of a stolen motor vehicle, where the circumstantial evidence shows *** that the vehicle was stolen. (See *People v. Span* (1987), 156 Ill. App. 3d 1046, 1050 ***.)" *Tucker*, 186 Ill. App. 3d at 694.

A review of other reported cases in Illinois involving passengers in stolen motor vehicles has revealed the following.

In *People v. Brown*, 184 Ill. App. 3d 277, 540 N.E.2d 782 (1989), this court affirmed the defendant's conviction for possession of a stolen motor vehicle where the defendant was observed taking a tire off a stolen car and he had hubcap emblems from the car in his pocket.

In *People v. Davenport*, 176 Ill. App. 3d 142, 530 N.E.2d 118 (1988), this court affirmed the defendants' convictions for possession of a stolen motor vehicle where the defendants were observed removing lug nuts from the tire of a stolen car. The defendants were using a lug wrench that had been taken from the car's trunk.

The defendants in *Santana*, *Tucker*, *Brown* and *Davenport* all

participated in some way in the stripping of the vehicles they were found guilty of possessing. There is no such evidence against defendant.

The only case in Illinois affirming the conviction of a passenger for possession of a stolen motor vehicle where there was no evidence that the passenger participated in the stripping of the vehicle is *People v. Span*, 156 Ill. App. 3d 1046, 509 N.E.2d 1057 (1987). In *Span*, the owner of a Cadillac was awakened when she heard her car's engine start up. She saw the car being driven out of her driveway, and she immediately notified the police of the theft. She then discovered that her home had been broken into and her car keys, among other items, were missing.

Forty minutes later, an Illinois state trooper saw the stolen Cadillac and attempted to stop it. A high speed chase ensued and the defendant, who was a passenger in the stolen vehicle, ran from the car before he was apprehended. The appellate court affirmed Span's conviction for possession of a stolen motor vehicle. The court pointed out that the defense relied upon *People v. Abrams*, 360 Ill. 594, 196 N.E. 801 (1935). In *Abrams*, the Illinois Supreme Court found that evidence that a defendant was riding as a passenger in a recently stolen automobile was insufficient to show that the defendant was in possession of the car, pointing out, "the defendant was riding in the back seat of a recently stolen automobile which was being driven by another. The facts of the case do not bring it within the rules laid down in the [theft by possession] cases cited." *Abrams*, 360 Ill. at 596.

The appellate court in *Span* did not address *Abrams* but cited *People v. Williams*, 44 Ill. App. 3d 143, 358 N.E.2d 58 (1976), for its holding that the State may prove that a defendant had knowledge that a vehicle was stolen through circumstantial evidence. While this is true, the defendant in *Williams* was arrested as he was stripping a stolen car.

In the present case, the State does not address the issue of possession but rather argues that we should affirm defendant's conviction of possession of a stolen motor vehicle based on the theory that he was legally accountable for the actions of the driver. To be legally accountable for another person's commission of a criminal offense, the State must prove that the defendant, "[e]ither before or during the commission of [the] offense, and with the intent to promote or facilitate such commission *** solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." 720 ILCS 5/5—2(c) (West 1994); *People v. Batchelor*, 171 Ill. 2d 367, 375, 665 N.E.2d 777 (1996). The State bases its argument on

its assertion that defendant benefitted from the driver's crime. This may be true but that fact does not make defendant accountable for the driver's actions in possessing the stolen motor vehicle in this case. While the State cites several cases in support of its argument that defendant is accountable for the driver's actions, none of the cases involve possession of a stolen motor vehicle.

With the exception of *Span*, every reported case in Illinois affirming the conviction of a nondriver for possession of a stolen motor vehicle involved the defendant exercising control over the stolen vehicle by participating in the stripping of the vehicle. Even in *Span*, the vehicle had been stolen only 40 minutes prior to the defendant passenger's arrest. This is strong evidence that the defendant participated in the theft of the vehicle itself. However, inasmuch as *Span* holds that a passenger in a stolen motor vehicle may be found guilty of possession of that vehicle based only on his knowledge that the vehicle is stolen, we decline to follow it. We hold that for a passenger in a stolen motor vehicle to be found guilty of possession of a stolen motor vehicle, the element of possession must be proven by evidence that the passenger exercised sufficient control over the vehicle or participated in the theft of the vehicle or theft of a part of the vehicle.

For the foregoing reasons the judgment of the circuit court of Cook County is reversed.

Reversed.

THEIS, J., concurs.

JUSTICE ZWICK, dissenting:
I dissent.

Defendant was tried and convicted of possession of a stolen motor vehicle on the theory of accountability. Thus, the sole focus of our inquiry should be whether the evidence was sufficient to sustain the defendant's conviction. In my view, the evidence adduced at trial undeniably established that defendant and his companion were engaged in a common criminal design to possess and use this stolen vehicle in furtherance of their shoplifting and drug purchases and use.

Defendant admitted that he remained in the vehicle long after he had knowledge of facts that would have led a reasonable person to conclude that the car was stolen. Indeed, the majority concludes that the evidence was more than sufficient to prove that defendant knew the car was stolen. Thus, defendant was present during the commission of the crime and was well aware that possession of this vehicle

was unlawful. In addition, defendant and his companion were in the car together for an extended period, using it to shoplift food items from supermarkets, to sell those items, and to purchase and to use the proceeds to purchase and smoke rock cocaine. It is undisputed that defendant never reported the crime, nor did he oppose, disapprove, or attempt to withdraw from the enterprise. Moreover, defendant fled from the scene when he and his companion were unable to outrun the police in the vehicle.

An accused may be deemed accountable for acts performed by another pursuant to a common plan or purpose. *People v. Furby*, 138 Ill. 2d 434, 456, 563 N.E.2d 421 (1990). Under this rule, where two or more people engage in a common criminal design, any acts in furtherance thereof committed by one party are considered to be the acts of all parties to the common design and all are accountable for those acts. *People v. Martin*, 271 Ill. App. 3d 346, 351, 648 N.E.2d 992 (1995). A common purpose or design may be inferred from the circumstances surrounding the perpetration of the unlawful conduct (*People v. Taylor*, 164 Ill. 2d 131, 141, 646 N.E.2d 567 (1995); *People v. Reid*, 136 Ill. 2d 27, 62, 554 N.E.2d 174 (1990)), and evidence that a defendant voluntarily attached himself to a group bent on illegal activity with the knowledge of its design supports an inference that he shared the common purpose (*People v. Perez*, 108 Ill. 2d 70, 82-83, 483 N.E.2d 250 (1985)).

In deciding defendant's legal accountability, the trial court could properly consider evidence that defendant was present during the commission of the offense, did not oppose or disapprove of it, maintained a close affiliation with the driver of the stolen vehicle, failed to report the crime, and fled the scene when the police finally stopped them. See *Taylor*, 164 Ill. 2d at 141; *Reid*, 136 Ill. 2d at 62.

Based upon this evidence, I would affirm the defendant's conviction.